[No. 11718. Department One. April 28, 1914.]

EDWIN E. ELSTON et al., *Respondents,* v. NELLIE G. McGLAUFLIN et al., *Appellants.*[1]

NEW TRIAL—MISTRIAL—BIAS OF JUDGE—MISCONDUCT—RIGHT TO FAIR TRIAL. A new trial should be granted on account of bias on the part of the trial judge and failure to accord a fair trial, where it appears that, on an issue as to the cause of a slide upon the property of adjoining landowners, the judge made a personal investigation of the location without the consent of the parties, for the purpose of verifying a theory of his own at variance with the expert testimony, and based his decision upon his preconceived opinion and because of his own former experiences with slides in the locality, and was evidently prejudiced against one of the experts.

ADJOINING LANDOWNERS—REMOVAL OF LATERAL SUPPORT—EVIDENCE—ADMISSIBILITY. Upon an issue as to the cause of slides upon property of adjoining landowners, evidence that a third retaining wall, put up under the direction of one of the expert witnesses, had broken after the slide, is admissible to support defendant's theory that

[1]Reported in 140 Pac. 396.

the slide was referable to the general character of the soil, and not to removal of lateral support, and to impeach the testimony of the experts holding a contrary opinion.

SAME—REMOVAL OF LATERAL SUPPORT—MEASURE OF DAMAGES. The measure of damages for the removal of lateral support, causing a slide upon plaintiff's property, is the depreciation in the value of the property immediately before and after the slide; and the reasonable cost of building a retaining wall may be considered in estimating such depreciation.

Appeal from a judgment of the superior court for King county, Smith, J., entered September 24, 1912, upon findings in favor of the plaintiffs, in an action in tort, tried to the court. Reversed.

*Morgan & Brewer* and *C. R. Barney*, for appellants.

*Skeel & Whitney*, for respondents.

CHADWICK, J.—This case was brought by plaintiff to recover damages alleged to have been suffered by reason of the negligent construction of an apartment house upon an abutting lot. The property is situate upon a steep hill side. It is alleged that defendants made a cut into the hill without supporting it in any way, and thereafter, when the land began to slide, put in an insufficient support. The testimony of defendants tended to show that the slide resulted because of an insufficient retaining wall which plaintiffs had erected upon their own property, and against which earth had been filled to a depth of four or five feet, and that the slide was caused by the slipping of the blue clay formation in consequence of heavy rains; that it was not confined to the property of the parties to this action, but was general in that locality. The case went to trial. There was a decided conflict of testimony, both as to the physical facts and the testimony of the expert witnesses, the opinions of Hon. Geo. F. Cotterill, John L. Hall and W. H. Fritch, being offered by plaintiffs and that of Hon. R. H. Thompson by the defendants. All of these men are engineers of standing and experience. A judgment was entered in favor of the plaintiffs.

It is unnecessary to review the testimony or determine the weight of the evidence, for we are met at the threshold by a circumstance that will, in our judgment, compel a reversal of the case.

From the remarks of the judge when deciding this case, it is plain that he had theretofore made some investigations, advanced some theories, and drawn some conclusions, with reference to sliding ground in that vicinity. While the trial was in progress and without the knowledge of either side, the judge went upon the property and made an independent investigation. The trial occurred two and a half years after the slide, and after walls had been rebuilt and the property practically restored. In deciding the case the court said:

"Now the facts in the case I do not think—the physical facts are very much in dispute. There is a slide there which was a damage to both plaintiff and defendant. The theory upon which the decision is to be made in part is as to what caused that slide. In arriving at that conclusion I have listened carefully to all the testimony. I went out last evening after the trial and thoroughly investigated the surface of the ground and the lots of the adjoining premises, and I have also had recourse to my own observation and experience and to the common sense appeal to such expert testimony. My residence in the city here has covered a large number of years and I have at times owned property in sliding districts. I think it is only fair to use my own judgment and common sense. At one time I lived on premises parallel to the claim here, having erected a house on a side hill and put in a bulkhead and an excavation was made lower down the hill. My bulkhead settled, slipped onto my neighbor and the following year my residence did the same. At that time I listened to the theories of Mr. Thompson on one side and way down to a mechanic's on the other, and I studied the theory of slides as effectively as I could at that time. I respect the opinion of Mr. Thompson very much; I did at that time, and I still do, as an expert. He has studied the situation, but I do not agree with him on his conclusions. Now this theory that there has been, as he states in his lecture—you might call it so because I have heard it repeatedly—it is true that there have been areas that have slid and are still

sliding; but his theory it seems to me is applicable only in large areas of wild land where the drainage has never been caught and the country has not been roofed over; but here is an area in the city that has been in a large measure roofed over; the streets graded and sewers cut, and as I observed it last night and as I have seen it for years it looked to me that the whole district had reached the point where slides would stop when the country is roofed over, it has been pretty thoroughly roofed over, and those are not the same conditions that exist in raw land where the slide from an uncompleted action of nature exists. . . .

"My observation of the holding of the hillside, there is an angle of repose at which the land ultimately settles, and I believe that land has settled to that angle of repose at the time that this apartment house of the defendant was constructed. . . .

"Now Mr. Thompson's testimony is expert. He thoroughly understands the question of slides. Mr. Thompson has not in my judgment reached the seat of this difficulty when he states that this was a part of a general slide. . . .

"Mr. Clapp testified here as to the value of the cubic yards of wall at that time on these premises. As against his opinion testimony we have testimony of the contractor and the owner as to what was actually paid for the walls. That must be conclusive. I realize that these things are somewhat exaggerated at times, and I think that the plaintiff is reasonably damaged in the sum of $900."

Without denying the right of a trial judge to inform himself by a view of property, not to prove some *res gestae* fact, but in order to clear up or harmonize the testimony, or that he may draw a proper conclusion when beset by the conflicting opinions of experts, we nevertheless feel that the motion for a new trial should have been granted. The language of the court makes it most likely that, however honest his intention, his view was not made for the purpose of clearing any doubt that may have been in his mind, but to verify a theory of his own and a preconceived notion of physical facts. It is clear that, because of former experiences and independent investigations, he had an unconscious prejudice against the testi-

mony of Mr. Thompson. This is indicated by the whole
tenor of his remarks, and his rejection of Mr. Thompson's
theories in toto, notwithstanding his offering that he had
"lived on premises parallel to the claim (lot) here," and that
a slide had occurred, to his damage, whereas, a slide upon
parallel ground seems to us to give strong support to Mr.
Thompson's opinion that the slide was the result of natural
causes, was general, and likely to occur anywhere in that vi-
cinity. The resort of the judge to inspection and the appli-
cation of his own theories gathered from personal experiences,
is sufficient to create a doubt in the minds of the defendants,
and would, in the event of affirmance, make them wonder for
all time whether they had had a fair trial.

Where a view is had by a trial judge, and it appears that
his inspection and observation are made an integral part of
his judgment, and the parties have not consented thereto, his
judgment will be rejected on appeal (1 Chamberlayne, Mod-
ern Law of Evidence, p. 574; *Denver Omnibus & Cab Co. v.
Ward Auction Co.*, 47 Colo. 446, 107 Pac. 1073), because "it
is difficult for this court to determine whether he erred or not,
considering what he had before him." *Atlantic & B. R. Co. v.
Cordele*, 125 Ga. 373, 54 S. E. 155.

A defeated litigant is entitled not only to a fair trial, but
to the semblance of a fair trial. He has a right to the free
judgment of a court or jury, unclouded by bias, prejudice,
or fixed or preconceived opinion. Without this, the judg-
ments of courts would no longer command or deserve public
confidence, and without confidence courts have no function to
perform. Clearly, the judge would have been rejected as a
juror upon a challenge for cause, had the remarks quoted been
brought to the attention of the court, and for like reason, the
case should have been referred by him to another judge for a
new trial.

We do not want to be misunderstood in this case, nor
should it be confused with those cases where the case has

been fairly tried before a jury, a verdict returned, and a judgment entered, and the court, when passing upon a motion for a new trial, says that had he been a juror, he would have decided the case differently, or made some equivalent expression. (See cases collected in *Brown v. Walla Walla*, 76 Wash. 670, 136 Pac. 1166). In such cases, it would be manifestly wrong, after a fair trial before an impartial jury, to set aside a verdict because of the personal opinion of the judge. In this case, the opinion of the judge inheres in the judgment. It became an integral part thereof. The court unwittingly became a witness in the case, and in some degree, at least, based his judgment upon his own independent experience and preconceived opinion. In doing so, he denied, perhaps unintentionally, the probative force of the opinions of defendant's witnesses.

The court rejected evidence proffered to show that a third wall built by plaintiff under the direction and plans of Mr. Cotterill after the slide and after defendants had built an area wall below, had broken. This was error. It was competent as tending to support defendant's theory and Mr. Thompson's opinion, that the slide was referable to the general character of the soil in that vicinity, and not to the cut below; and in support of defendant's theory that the break was because plaintiff's wall was insufficient to sustain the weight that had been put against it; and also as tending to impeach the expert opinion of Mr. Cotterill that plaintiff's wall was sufficient, and that the slide was caused by defendants excavating below it.

As to the measure of damages, plaintiffs claim the amount they had paid out for a new wall. If plaintiffs recover, the measure will be the depreciation in value of the property, its worth immediately before and immediately after. *Olsen v. Goerig*, 45 Wash. 541, 88 Pac. 1017. The reasonable cost to be allowed for a new wall might be considered in estimating such depreciation, but defendants would not be bound to meet an amount paid or agreed to be paid, unless it was made to appear that it was the reasonable cost thereof. *Fairbanks*

*Steam Shovel Co. v. Holt & Jeffery, post* p. 361, 140 Pac. 394; *Torgeson v. Hanford, ante* p. 56, 139 Pac. 648.

Reversed, and remanded for a new trial.

CROW, C. J., ELLIS, MAIN, and GOSE, JJ., concur.