SHAPIRO v. JOHNSON.

1. FRAUD—DAMAGES—WEIGHT OF EVIDENCE.
    In action for damages for fraud in exchange of real estate,
    verdict within range of evidence is not against weight of
    evidence because no witness placed damages at exact amount
    found.

2. SAME—QUESTION FOR JURY.
    Where evidence made case for the jury on question of fraud,
    and the trial judge properly submitted the issues to the jury,
    verdict must stand.

Error to Muskegon; Vanderwerp (John), J. Sub-
mitted June 11, 1929. (Docket No. 81, Calendar
No. 34,014.) Decided July 8, 1929.

Case by Sam Shapiro and another against Allan
R. Johnson and another for damages for fraud in an
exchange of lands. From a judgment for plaintiffs,
defendants bring error. Affirmed.

*George S. Lovelace,* for plaintiffs.

*Louis H. Osterhous* and *Cross, Foote & Sessions,*
for defendants.

WIEST, J. This action was brought to recover
damages for claimed fraudulent misrepresentations
in an exchange of real estate. Plaintiffs had verdict
and judgment for less damages than they demanded.
Defendants' motion for a new trial was denied, and
they review by writ of error, claiming that the
amount of the verdict is unsupported by evidence
and the finding of fraud is against the weight of the

evidence. There is no merit in the first point. The award was within the range of evidence, although no witness placed it at the exact sum found. The second point requires consideration of the issues and evidence.

A quotation from the lucid instruction given the jury by the trial judge will show the claims and issues:

"The plaintiffs in this case claim that they, as husband and wife, in October of 1924 were living on a farm in Crockery township, Ottawa county, consisting of 80 acres of land, which has been described to you as two 40's in section 9 of that township; that such farm was of the value of $7,500 and was mortgaged for $3,500, leaving plaintiffs' equity therein $4,000; that on or about October 22, 1924, the defendants, with intent to cheat and defraud the plaintiffs, represented that they owned a piece of property in the city of Muskegon of the value of $4,000 which they would trade with the plaintiffs for their farm in Ottawa county, that this piece of property in Muskegon was a house and lot in a good and restricted neighborhood in Muskegon, and would readily rent for $35 a month. * * * that, induced by these false representations claimed to have been made by the defendants to the plaintiffs, the plaintiffs on October 22, 1924, executed a warranty deed of the farm to the defendants and defendants executed with Dora Shapiro, the wife of Sam Shapiro, a contract for the Muskegon property, the consideration named for the latter property being $3,200, of which $800, according to the contract, was named as cash paid thereon, being the equity in the Ottawa county farm, and the balance to be paid by monthly payments, which plaintiffs claim the defendants represented would easily be paid out of the rent to be received from the house and lot, which rent would be collected by the defendants and applied by them thereon. * * *

"The plaintiffs also claim, gentlemen, that the house and lot was not worth $4,000, but was worth not exceeding $2,500, and that the rental value was not exceeding $15 or $20 per month, and they claim that the defendants also later served upon them a notice of forfeiture of the land contract for the house and lot and have taken possession of the same.

"Plaintiffs also claim that the filling station at Spring Lake, now owned by them, on leased ground of the interurban railroad, was not in the deal for the trading of properties between them, but was a separate transaction, the plaintiff, Mrs. Shapiro, purchasing the same from the defendants, paying therefor $300 in cash and note, and that the same has nothing to do with the original trade between the parties and is not involved in this suit. And plaintiffs claim, * * * that they should now have damages, being, as they claim, the difference between the value of the property received by them as it actually was in October of 1924 and its value as it would have been at that time had it been as represented.

"The defendants, on the other hand, claim, gentlemen, that they are not liable to the plaintiffs in this case, that they made no false representations regarding the value of the house and lot in Muskegon or as to its rental value. They claim that in October, 1924, they made a trade with the plaintiffs whereby the defendants were to receive plaintiffs' equity in the Ottawa county farm, which was figured to be $900, the value of the farm as fixed between them being $4,000, from that deducting incumbrances by way of two mortgages amounting to $3,100, leaving $900 the value of the plaintiffs' equity in the farm; that plaintiffs were to receive therefor a filling station and equipment at Spring Lake of the value of $600 and a contract for the house and lot in Muskegon for a consideration of $2,800, of which $400 was to be considered cash and the balance, $2,400, to be paid in monthly installments, the $400 cash payment

on the contract and the $600 for the filling station making $1,000, leaving $100, which was taken care of by plaintiffs with a note for $100; that the cash payment, gentlemen, for the house and lot was named in the contract $800 at plaintiffs' request, which also required the purchase price to be stated in the contract as $3,200 instead of the actual purchase price of $2,800, the plaintiffs claiming that they ·wished this done in that way because it would· be an advantage to them in case they later sold the property. * * * ''

All the issues so stated by the trial judge were supported by testimony. The jury accepted plaintiffs' version.

The record has been examined, and we cannot find the verdict against the weight of the evidence. We may not try the case *de novo* and pass independent judgment upon the merits thereof. The case was one for consideration by the jury, and upon this record the verdict must stand.

No error. Affirmed, with costs to plaintiffs.

NORTH, C. J., and FEAD, FELLOWS, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred.