VALENTINE v. MALONE.

TRIAL—RELIANCE OF TRIAL JUDGE UPON PERSONAL OBSERVATIONS—
NONJURY TRIAL.

In nonjury trial of action by pedestrian against motorist for
personal injuries sustained in accident at street intersection at
which operation of a red and green traffic light was matter in
evidence, reliance of trial judge upon his personal observations
with respect to such light, made after the trial in the absence
of the parties and their counsel, *held*, reversible error.

Appeal from Wayne; Boyne (John A.), J., presiding. Submitted April 12, 1934. (Docket No. 90, Calendar No. 37,756.) Decided December 11, 1934.

Case by Charles M. Valentine against Emma Malone, for personal injuries sustained when struck at an intersection by automobile driven by defendant in an allegedly negligent manner. Judgment for plaintiff. Defendant appeals. Reversed and new trial granted.

*J. R. Doss* (*Lightner, Hanley, Crawford, Sweeny & Dodd,* of counsel), for plaintiff.

*Howard D. Brown* (*George H. Cary,* of counsel), for defendant.

POTTER, J. Plaintiff brought suit to recover damages for injuries resulting from being struck by defendant's automobile driven by her daughter. The accident occurred in Detroit, on Woodward avenue, at its intersection with Fort street, September 20, 1932, about one a. m. The case was tried before the court without a jury, judgment rendered for plain-

tiff and defendant appeals. Four questions are said to be involved. Defendant claiming:

1. Plaintiff was guilty of contributory negligence;

2. The preponderance of evidence shows plaintiff was guilty of contributory negligence;

3. The trial court erred in relying upon his personal observations made at the scene of the accident after the trial for the evidence in the case; and,

4. A preponderance of the evidence indicates plaintiff was intoxicated and shows he was contributorily negligent.

Court Rule No. 37 (1933), § 11, provides:

"When an action at law is tried by the court without a jury:—

"(a) The provisions of section 14159 of the Compiled Laws of 1929, or amendments thereto or other similar law, relating to the taking of testimony in equity cases, shall be applicable.

"(b) No special findings shall be required, but it shall be sufficient for the trial judge to find generally for or against the several parties.

"(c) The trial judge shall sign and file, or dictate to the stenographer, an opinion in which he shall set forth his decision and the substance of the judgment with a concise statement of his reasons therefor, and where he awards damages, the manner in which he has determined the amount.

"(d) No exceptions need be taken to any finding, decision or judgment."

Court Rule No. 64 (1933) provides:

"Upon appeal to the Supreme Court from a judgment in an action at law tried without a jury, such judgment may be affirmed or reversed, the cause remanded with directions, or a new trial ordered. Appellant may assign as error that the judgment is against the preponderance of the evidence; but

on appeals in civil cases error cannot be assigned for total lack of evidence on a material question unless such lack of evidence has been called to the attention of the court during the trial on or motion for a new trial.''

The consideration of this case on appeal directly involves the exercise by this court of power which it has no right to exercise.

The constitutional grant of jurisdiction to this court confers both original and appellate jurisdiction. There is a plain distinction between the two. The language of the constitutional grant is:

''The Supreme Court shall have a general superintending control over all inferior courts; and shall have power to issue writs of error, *habeas corpus,* mandamus, *quo warranto, procedendo* and other original and remedial writs, and to hear and determine the same. In all other cases it shall have appellate jurisdiction only.'' Article 7, § 4, Constitution of Michigan, 1908.

The Constitution of the United States provides:

''In all cases affecting ambassadors, other public ministers and consuls, and those in which a State shall be party, the Supreme Court shall have original jurisdiction. In all the other cases before mentioned, the Supreme Court shall have appellate jurisdiction,'' etc. Article 3, § 2, subd. 2.

Construing this language in *Marbury* v. *Madison,* 1 Cranch (5 U. S.), 137, 174, it was said:

''If it had been intended to leave it in the discretion of the legislature, to apportion the judicial power between the supreme and inferior courts, according to the will of that body, it would certainly have been useless to have proceeded further than to have defined the judicial power, and the tribunals

in which it should be vested. The subsequent part of the section is mere surplusage—is entirely without meaning, if such is to be the construction. If congress remains at liberty to give this court appellate jurisdiction, where the Constitution has declared their jurisdiction shall be original; and original jurisdiction where the Constitution has declared it shall be appellate; the distribution of jurisdiction, made in the Constitution, is form without substance. * * * The plain import of the words seems to be, that in one class of cases, its jurisdiction is original, and not appellate; in the other, it is appellate, and not original."

If the reasoning of *Marbury* v. *Madison, supra,* is sound, neither the legislature by statute, nor this court by rule, may provide for a change in the constitutional apportionment of jurisdiction made by the people. Article 7, § 4, of the Michigan Constitution above quoted.

This court has original jurisdiction to review cases by writ of error. The rules above quoted attempt to confer appellate jurisdiction on this court where the Constitution says its jurisdiction to review by writ of error is original. There is a fundamental difference between a writ of error and an appeal.

"An appeal is a process of civil law origin, and removes a cause entirely; subjecting the fact, as well as the law, to a review and retrial: but a writ of error is a process of common-law origin, and it removes nothing for re-examination, but the law." *Wiscart* v. *D'Auchy,* 3 Dallas (3 U. S.), 321, 327.

An appeal has no analogy to a writ of error. Appeals are inquisitorial, of civil law origin, not fixed by the Constitution, existing only by statute, and may be modified, amended or abolished in the discretion of the legislature. They operate on persons,

remove questions of fact to the appellate court, where there is a trial *de novo,* of the entire case begun below, which is continued for retrial in this court. Writs of error are individualistic, originated at common law, where the controversial system of trial was in vogue, are recognized and guaranteed by the Constitution and are not subject to legislative change. A writ of error institutes a new suit. It is an exercise of original jurisdiction by the court. It brings up the record below for review on errors alleged to be therein to see if the trial court proceeded according to law. If it did so proceed, the finding of the triers of the facts is conclusive. If error was committed in the proceedings of the trial court a new trial may be awarded, if there are facts in dispute to be determined by fact triers. A writ of error lies to review cases proceeding according to the course of the common law and prior to the 1931 rules of this court judgments rendered in proceedings according to the course of the common law could be reviewed only by writ of error.

Much may be claimed for Act No. 27, Pub. Acts 1929 (3 Comp. Laws 1929, § 13604), but that act confers no power or authority upon this court except in relation to those cases where its jurisdiction is appellate only. Its original jurisdiction is fixed, conferred and defined by the Constitution and was purposely placed beyond legislative tinkering or regulatory modification by the court. Unless the right of appeal is conferred by Constitution or statute it does not exist. *J. F. Hartz Co.* v. *Lukaszcewski,* 200 Mich. 230; *Harvey* v. *Pealer,* 63 Mich. 572; *Messenger* v. *Teagan,* 106 Mich. 654; *Mitchell* v. *Bay Probate Judge,* 155 Mich. 550; *Echlin* v. *Canvasser,* 239 Mich. 116. The granting and regulation of appeals by the legislature is an exercise of legislative power, to provide for the exercise by this court of

its appellate jurisdiction, especially conferred by the Constitution; but the legislature is not omnipotent. It cannot abdicate the powers expressly reposed in it by the people through the Constitution. It cannot tie its own hands. As said by Mr. Justice COOLEY:

"One of the settled maxims in constitutional law is that the power conferred upon the legislature to make laws cannot be delegated by that department to any other body or authority. Where the sovereign power of the State has located the authority, there it must remain; and by the constitutional agency alone the laws must be made until the Constitution itself is changed. The power to whose judgment, wisdom, and patriotism this high prerogative has been intrusted cannot relieve itself of the responsibility by choosing other agencies upon which the power shall be devolved, nor can it substitute the judgment, wisdom, and patriotism of any other body for those to which alone the people have seen fit to confide this sovereign trust." Cooley's Constitutional Limitations (6th Ed.), p. 137.

It is absurd to contend that by Act No. 27, Pub. Acts 1929, the legislature delegated to this court power to set aside or abrogate legislative enactments, overturn the Constitution, and thwart the will of the people as expressed therein, by declaring it shall exercise appellate jurisdiction in cases where the Constitution has declared its jurisdiction is original.

If we dispose of this case on the so-called appeal, as if it were regularly here on writ of error, we may not assume to pass upon the evidence.

"Where a case is tried by the court, it is the exclusive province of the judge to pass upon the testimony, and to draw inferences therefrom; and when findings of fact proposed by a party are refused,

such refusal is not subject to review in this court."
*Hogle* v. *Meyering,* 161 Mich. 472, 483.

"We cannot interfere with the action of the trial
judge in this respect. It is his exclusive province
to pass upon the testimony, and draw the inferences
therefrom. His conclusions as to its weight and
bearing are not reviewable in this court." *Beal* v.
*Polhemus,* 67 Mich. 130, 132.

"The findings of fact must be accepted in this
court as conclusive if there was evidence tending to
sustain them." *Powers* v. *County of Calhoun,* 172
Mich. 670, 677.

"The findings of fact made by the court on trial
without a jury will be taken as true if there is any
testimony in the case to support them." *Meyer* v.
*Shapton,* 178 Mich. 417, 422.

"This court may not in cases tried without a jury,
find any of the facts. Those found to be wholly un-
supported by the evidence, may, upon proper excep-
tions, be rejected. But the ultimate facts are to be
found by the trial court, and this whether the testi-
mony is or is not disputed." *Wilson* v. *Sauble,* 181
Mich. 406, 407.

"This court has no power in law cases to weigh
or construe evidence and make inferences or deduce
results. That jurisdiction is confined to other tribu-
nals. Its authority in reviewing law matters is re-
stricted to questions of law, and hence, though evi-
dence may be reported which a tribunal competent
to find the facts might consider abundantly sufficient
to make out certain required results, it cannot have
any force here." *Yelverton* v. *Steele,* 40 Mich. 538,
540.

"We cannot weigh evidence, determine facts or
review the findings of the court below upon ques-
tions of fact." *Holcomb* v. *Sayers,* 173 Mich. 238,
241.

"It is only where there is a total want of evidence or where the finding is contrary to the undisputed evidence that the facts found by the trial court can be overturned." *In re Hoffman's Estate,* 183 Mich. 67, 69.

By Act No. 27, Pub. Acts 1929, the legislature could not abdicate its legislative power. Neither the act, nor the rules passed in pursuance to its terms may in any way affect the original jurisdiction of this court fixed and defined by the Constitution.

This court in the exercise of its original jurisdiction may issue writs of error.

"The proceedings upon writs of error, as to the assignment of errors, and as to the appearance of the appellee, and the pleadings, judgment, and all other matters not herein provided for, shall be according to the course of the common law, as modified by the practice and usage in this State, and such general rules as shall be made by the Supreme Court." 3 Comp. Laws 1929, § 15495.

The writ of error mentioned in the Constitution is the writ of error as it existed at common law and in the jurisprudence of this State at the time the Constitution of 1850 was adopted for article 7, § 4, Constitution 1908, is but a continuation of article 6, § 3, of the Constitution of 1850. *Teller* v. *Wetherell,* 6 Mich. 46; *Tawas & Bay County R. Co.* v. *Iosco Circuit Judge,* 44 Mich. 479.

The jurisdiction of this court may not be modified by legislative act or rule of court. *Specht* v. *City of Detroit,* 20 Mich. 168; *People, ex rel. First National Bank,* v. *Wayne Circuit Judge,* 18 Mich. 483; *Atkins* v. *Borstler,* 46 Mich. 552; *Eddy* v. *Township of Lee,* 73 Mich. 123; *Fort Street Union Depot Co.* v. *Backus,* 92 Mich. 33.

The legislature has no control over the constitutional powers of the Supreme Court. *Dunham* v.

*Tilma,* 191 Mich. 688; *Nichols* v. *Judge of Superior Court of Grand Rapids,* 130 Mich. 187.

It is not competent for the legislature to confer appellate jurisdiction on this court in those cases where the Constitution says its jurisdiction is original, nor confer original jurisdiction on this court where by the Constitution its jurisdiction is appellate only, and this court may not exercise jurisdiction which the Constitution denies. It has power and authority by general rules to establish, modify and amend the practice, article 7, § 5, Constitution 1908, but under the guise of changing the practice it cannot limit or enlarge its own jurisdiction.

It is not competent for the legislature, by statute, nor for this court by rule, to provide cases such as that at bar may be reviewed by appeal, it being reviewable, according to the Constitution, by writ of error.

"We may not try the case *de novo* and pass independent judgment upon the merits thereof," *Shapiro* v. *Johnson,* 247 Mich. 587, without clearly violating the constitutional apportionment of jurisdiction, above discussed. The sole question that may be considered is: Was there error in the proceedings in the trial court?

In the opinion of the trial court it is said:

"Juries are often taken to the scene of an accident so that they may understand better the location of different objects at the point of the accident. The court has been familiar with the particular corner where this accident occurred for a number of years prior to the time of the installation of the traffic lights, and since the trial has taken occasion to observe the operation of those lights at the same hour of night that the accident is alleged to have happened. Some witnesses testified to one of the combination of lights as amber and red. This combina-

tion while used within a block or two of the scene of the accident, is not and has never been in use (according to the testimony) at the intersection of Fort street and Woodward avenue in Detroit.

"The traffic lights in the loop district instead of being synchronized for the easy flow of traffic, seems rather to be for the purpose of slowing up traffic and preventing a high rate of speed in the operation of cars. Counsel for defendant insists strenuously that mathematically at any of the speeds testified to at which defendant was operating a car, that the lights would be green when certain intersections were passed. I cannot agree with this contention. There is no testimony upon which to base such a conclusion, and observations made at the scene of the accident convinced me of the fallacy of this argument. Mathematically it might be but in fact is not so."

Every litigant is entitled to a fair trial before an impartial judge or jury; to have his case passed upon by persons without bias, interest, prejudice or preconceived notions of what the facts are or ought to be; and it is just as important to the administration of justice and the continuance of public confidence in judicial tribunals that every semblance of bias, interest, prejudice or preconceived notion as to the facts be removed in the trial of cases, because only thus may judicial tribunals continue to command the respect which is essential to the proper performance of the judicial function. A trial judge may not be swayed at all by bias, interest, prejudice or preconceived notions in relation to the facts involved in a particular case. He may, in fact, be absolutely right in his ideas, but the important thing from the standpoint of the public interested in the due administration of justice, is that there be no room for suspicion that such bias, interest, preju-

dice or preconceived notions may perhaps have warped the judicial judgment and affected for good or ill the disposition of the case before the court. These principles are so elementary the citation of authorities to sustain them seems superfluous.

In *Elston* v. *McGlauflin,* 79 Wash. 355 (140 Pac. 396, Ann. Cas. 1916 A, 255), an action was brought for negligence arising from the slipping of soil caused by an excavation for an apartment. The trial court visited the premises. In reversing the case the court said:

"A defeated litigant is entitled not only to a fair trial, but to the semblance of a fair trial. He has a right to the free judgment of a court or jury, unclouded by bias, prejudice, or fixed or preconceived opinion. Without this the judgments of courts would no longer command or deserve public confidence, and without confidence courts have no function to perform. Clearly the judge would have been· rejected as a juror upon a challenge for cause, had the remarks quoted been brought to the attention of the court and for like reason, the case should have been referred by him to another judge for a new trial."

A question similar to that involved was before the court in *Denver Omnibus & Cab Co.* v. *J. R. Ward Auction Co.,* 47 Col. 446 (107 Pac. 1073, 19 Ann. Cas. 577), an action to recover damages resulting from negligence of defendant causing a collision. The case was tried before the court without a jury:

"After the case was submitted, the trial judge without the knowledge or consent of either of the parties, visited the scene of action, and in disposing of the case, stated that from his examination, it appeared the statements of the driver of the wagon belonging to the defendant with respect to the posi-

tion of the witness for plaintiff to whom we have referred, could not be true and for that reason concluded, as he stated, that little credit could be given to anything else that the driver has said.''

This is substantially what the trial judge did in the case at bar. In disposing of the question raised the court in that case said:

''We know of no rule of law or practice which authorizes a trial judge, after a cause has been submitted to him for determination, to search, of his own motion and without the consent of the parties, for extrinsic testimony and circumstances, and apply what he may learn in this way to corroborate the testimony upon one side or to cast discredit on the testimony of the adverse party. In view of the decided conflict in the testimony it is apparent that what the trial judge assumed to have learned, as the result of visiting the premises where the alleged collision took place, was applied to the prejudice of the defendant in determining the weight of the testimony of the respective parties and the facts which should have been determined from the testimony submitted to him alone.''

In this State, a trial court may, in civil cases, 3 Comp. Laws 1929, § 14301, as well as in criminal cases, 3 Comp. Laws 1929, § 17321, order a view; not for the purpose of procuring evidence, but to enable the jury to more clearly comprehend the evidence given. *People* v. *Auerbach,* 176 Mich. 23 (Ann. Cas. 1915 B, 557). No statute authorizes the trial court, acting as a trier of facts, to view premises. By the great weight of authority no statute authorizing such view is necessary, 64 C. J. p. 1201; but, ''It is elementary that the court must base its decree upon testimony given in open court.'' *McCamman* v. *Davis,* 162 Mich. 435. If the rule were otherwise, verdicts and findings could be based upon

personal observation on inspection or view, regard-less of the evidence, its weight or character. No one could have knowledge of the basis of a verdict or finding because it would not necessarily be based on evidence in court, but on observations of the jury on a view or, in case of trial by court, on observations of the judge thereof out of court. There would be no way to review findings or verdicts based upon the weight of evidence because no one could know the weight given to the evidence in court and to the personal observations based on inquisitorial investigation. The trial judge says he was satisfied from his personal observations of the fallacy of defendant's argument, that is, was satisfied from the evidence obtained from his own observations, without proof, the lights involved were in the same condition or operated the same way when his observations were made as when the accident occurred.

We still have in most things the controversial method of trial. If and when we adopt the inquisitorial method the court may, perhaps, without error make personal investigations and arrive at conclusions based thereon in disregard of the evidence adduced in court. The trial court was in error in arriving at conclusions based upon his personal observation and not upon the testimony.

It is urged by defendant, plaintiff was guilty of contributory negligence as a matter of law. This contention is based upon the testimony indicating plaintiff was intoxicated and heedlessly walked against the side of defendant's automobile, entering the intersection against a red light. In passing upon this contention, we must consider the testimony in its light most favorable to plaintiff, and, when so considered, the contributory negligence of the plaintiff was a question of fact for the court.

The trial court so determined and with his conclusion upon this question we agree.

Judgment reversed, with costs. New trial granted.

Fead, J. (*concurring*). I concur in the result reached by Mr. Justice Potter and in that part of his opinion dealing with error in the trial court.

Butzel, J., concurred with Fead, J.

Wiest, J. (*concurring*). The judgment should be reversed with costs.

It was error for the circuit judge, as trier of the facts, to employ his *ex parte* view of the *locus in quo* as substantive evidence.

Bushnell, J. I regret that I am unable to agree with the opinion of Mr. Justice Potter. The question on which we differ pertains to observations made by the trial judge at the scene of the accident, in the absence of the parties and their counsel. I feel that *Elston* v. *McGlauflin,* 79 Wash. 355 (140 Pac. 396, Ann. Cas. 1916 A, 255), and *Denver Omnibus & Cab Co.* v. *J. R. Ward Auction Co.,* 47 Col. 446 (107 Pac. 1073, 19 Ann. Cas. 577), which are cited to support his conclusions, are contrary to the weight of authority, which is well expressed in 64 C. J. pp. 1200–1202, §§ 1005–1007, inclusive, from which I quote in part:

"On the trial of a cause by the court without a jury, it has very generally been held that the judge trying the case may, in the exercise of his discretion, inspect material objects, or view premises in dispute or premises where facts material to the cause have occurred. While this power has sometimes been expressly conferred by statute, no statutory authority is necessary to the exercise thereof. The power may be exercised on the request of either or both of the parties, or upon the judge's own motion. * * *

"A view or inspection of the character under consideration is, of course, permissible for the purpose of enabling the court properly to understand the evidence, and properly to apply it; and in many jurisdictions this is the only purpose for which a view or inspection is permissible. It cannot be considered as evidence or have the effect of supplying evidence independent of, or in addition to, that taken in the course of the trial, nor meet the requirement that proof of necessary facts be made. On the other hand, it has been held in some jurisdictions that the facts ascertained by a view are to be considered as in evidence and given due weight in reaching a conclusion. But impressions made on the judge by his own inspection of premises are entitled to little, if any, weight in a matter involving special knowledge and experience and as to which experts differ, and do not dispense with proof of matters requiring expert skill and knowledge. And it has further been held that a judgment cannot be sustained where a finding is based on inspection alone, unsupported by other evidence.

"The inspection or view as a matter of judicial propriety should be in the presence of the parties, or their attorneys, or they should be given an opportunity to be present, and the inspection 'reduced to form.'"

The better authority, I think, is as follows:

"A judge when taking a view, acts simply as a trier of facts;—he is *pro hac vice* the jury." *Carpenter* v. *Carpenter,* 78 N. H. 440, 448 (101 Atl. 628, L. R. A. 1917 F, 974).

An inspection of the premises for the purpose of enabling the court to properly understand and apply the evidence is not error. *Claesgens* v. *Animal Rescue League of Hennepin County, Inc.,* 173 Minn. 61 (216 N. W. 535).

"No good reason has been shown why a trial judge may not, in a proper case, go outside of a courtroom and view an object that from its nature will not admit of its being brought into court." *Mason* v. *Braught,* 33 S. D. 559 (146 N. W. 687).

Nor is the determination of my Brother Potter, in my opinion, in accord with the law as established by our own decisions.

*Morse* v. *Blanchard,* 117 Mich. 37, was an action on a promissory note, tried without a jury. It was conceded that the word "two" and the word "one" had been written in the note. It was a question which was written first. We there said:

"It is urged as error that the judge, after the submission of the case, made a microscopical examination, in order to determine which word was written first. Whether the court made such examination does not appear. If he did, he committed no error. Judges and jurors have the right to the most critical examination in such cases, and to use magnifying glasses for that purpose."

*McCamman* v. *Davis,* 162 Mich. 435, was an action in equity for the partitioning of certain real estate. The complainants testified that the property would, in their opinion, bring a higher price if sold as one parcel than it would if divided into three or more parcels. The defendant offered no testimony. The court decreed a sale in three parcels. In answering defendant's contention that under the proofs the court could do nothing but decree a sale *en masse,* Mr. Justice Brooke, speaking for the court, after commenting upon the absence of proof on the part of defendant, said:

"It may be that he relied upon the knowledge of the court as to the situation. It is elementary that

the court must base its decree upon testimony given in open court. Knowledge gained by a view of the premises might, with propriety, be used to determine which of two methods of sale should be adopted, where both are supported by proofs; but such knowledge cannot *alone* be made the basis of a decree.''

In passing upon the right of the accused in a criminal case to be present when the scene of the crime was viewed by the jury, Mr. Justice Cardozo in *Snyder* v. *Massachusetts,* 291 U. S. 97 (54 Sup. Ct. 330, 90 A. L. R. 575), cited our decision in *People* v. *Auerbach,* 176 Mich. 23 (Ann. Cas. 1915 B, 557), as authority for upholding the privilege of the accused to be present if due demand is made. We there said:

''The matter of the view of the place where an alleged crime has been committed seems to be discretionary with the court. The question whether the purpose of the view is to furnish new evidence, or to enable the jurors to comprehend more clearly by the aid of visible objects the evidence already received, is one upon which the courts seem to be divided; the better doctrine being the latter of the above propositions.''

I can see a distinction between the viewing of moving objects or apparatus such as traffic signals, and the viewing of the place of the accident.

I do not subscribe to the discussion of the effect of the rule and the question of appellate jurisdiction.

I therefore concur only in the result.

NELSON SHARPE, C. J., and NORTH and EDWARD M. SHARPE, JJ., concurred with BUSHNELL, J.