EWING JOINT LIVING TRUST v. MCHENRY



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:EWING JOINT LIVING TRUST v. MCHENRY

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 EWING JOINT LIVING TRUST v. MCHENRY
2020 OK CIV APP 48
Case Number: 117649
Decided: 08/27/2020
Mandate Issued: 09/30/2020
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2020 OK CIV APP 48, __ P.3d __

 

THE HAROLD AND KATHY EWING JOINT LIVING TRUST AGREEMENT DATED JULY 28, 2011, Plaintiff/Appellee,
v.
LORA BELL MCHENRY, Defendant/Third-Party Plaintiff/Appellant,
v.
JOHN DAVID ROSELLE and RCB BANK, Third-Party Defendants/Appellees.

APPEAL FROM THE DISTRICT COURT OF
MAYES COUNTY, OKLAHOMA

HONORABLE REBECCA J. GORE, TRIAL JUDGE

AFFIRMED

Fred H. Sordahl, Pryor, Oklahoma, for Appellees

Michael P. Van Tassell, Tulsa, Oklahoma, for Appellant

DEBORAH B. BARNES, PRESIDING JUDGE:

¶1 Lora Bell McHenry appeals from the trial court's denial of her motion for new trial. Ms. McHenry asserts the trial court erred when it viewed the premises at issue in this case in person and, according to Ms. McHenry, relied upon that viewing in "large part, if not exclusively," in reaching its determination. Based on our review, we affirm.

BACKGROUND

¶2 This case arises from a dispute as to whether a certain chain-linked fence, constructed approximately thirteen years before the commencement of this action, runs along the relevant boundary line, or whether it instead encroaches on neighboring properties. The parties agree the chain-linked fence replaced a long-existing barbed-wire fence that previously ran along the boundary line, but they disagree as to whether the chain-linked fence was placed in the exact location of the previous barbed-wire fence.

¶3 As stated in the pre-trial conference order,

Both the Plaintiff [i.e., the Harold and Kathy Ewing Joint Living Trust Agreement Dated July 28, 2011 (the Trust)] and the Third Party Defendant [i.e., John David Roselle][1] claim that the chain-linked fence built by [Ms. McHenry] extends approximately four (4) feet further to the West than the barbed wire fence that it replaced. [Ms. McHenry] alleges that the chain-link fence she had installed was placed in exactly the same location as the old barbed wire fence. [The Trust] and [Mr. Roselle] seek an Order of the Court directing [Ms. McHenry] to remove the fence that encroaches upon their properties, and seek an Order of the Court permanently enjoining [Ms. McHenry] from any future encroachments. [Ms. McHenry] seeks an Order of the Court quieting title to her property determining that the current chain-link fence is on the current boundary line between the parties' properties.

¶4 After a non-jury trial, the trial judge viewed the area in controversy in person upon the request of Ms. McHenry's counsel and with the consent of the parties.

¶5 In its Journal Entry of Judgment filed on October 17, 2018, the trial court ordered, among other things, that Ms. McHenry "immediately remove her fence from the properties owned by [the Trust] and [Mr. Roselle], and . . . place her fence on the parties' property line as reflected in the [survey attached to the Judgment]." Within ten business days, Ms. McHenry filed a motion for new trial in which she asserted, among other things, that the trial court erred "when it viewed the property . . . and relied upon said viewing as an evidentiary basis for its decision . . . ."

¶6 In an order filed in November 2018, the trial court denied Ms. McHenry's motion, stating:

1. The Court viewed the property in question upon the request of [Ms. McHenry], and as agreed upon by the other parties. The Court, by agreement of the parties, was to accompany both [Ms. McHenry's] attorney and [the attorney for the Trust and Mr. Roselle] to the property on or about the 30th of May 2018, at 4:00 p.m., per the filed Order for Setting Matter for Trial.

2. The parties cancelled that scheduled viewing, but asked the Court to view the property upon the conclusion of the trial on the 31st day of May 2018.

3. After the conclusion of all evidence and at the continued request of the parties, the Court agreed to view the property in the late afternoon of May 31.

4. The Court then viewed the real property in question around 4:00 p.m. on the 31st day of May 2018, in accordance with the parties' agreement. The Court walked the fence line and viewed the fence, the gates, the posts, and markers that had been mentioned through the parties' witnesses and exhibits. The Court stayed approximately 15 minutes.

5. The Court finds no improper viewing took place as to the property. The Court viewed the property as had been agreed by the parties and in accordance with the parties' stipulations. Since there was no improper viewing, there was no irregularity in the proceedings. . . .

6. . . . The Court carefully considered and weighed the testimony of every witness and reviewed fully every exhibit admitted into evidence. After much consideration, the Court simply found the Ewing Trust/Roselle testimony more convincing in light of all the evidence.

. . . .

¶7 From the trial court's order denying her motion for new trial, Ms. McHenry appeals.

STANDARD OF REVIEW

¶8 "[A]n abuse of discretion standard is used for appellate review of an order denying a motion for new trial. An abuse of discretion occurs when a court bases its decision on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling." Grisham v. City of Okla. City, 2017 OK 69, ¶ 4, 404 P.3d 843 (footnotes omitted).

ANALYSIS

¶9 Ms. McHenry asserts on appeal as follows:

The issue in this case is whether the District Court erred when it relied on evidence obtained during its ex parte viewing of the properties in rendering its decision against [Ms. McHenry]. This is not a direct challenge to the sufficiency of evidence presented on the record. Rather, it is a challenge to the District Court's use of its observations made during an ex parte view of the properties.

¶10 To make her argument, Ms. McHenry relies on multiple cases from other jurisdictions. She first relies on Valentine v. Malone, 257 N.W. 900 (Mich. 1934), in which the court concluded "[t]he trial court was in error in arriving at conclusions based upon his personal observation and not upon the testimony." 257 N.W. at 904. That case arose from an automobile accident at an intersection which the trial court visited. However, unlike in the present case, the trial court in Valentine visited the scene without the knowledge or consent of the parties. See id. (The court compared the circumstances presented in Valentine with a case in which "the trial judge, without the knowledge or consent of either of the parties, visited the scene of action," and the Valentine Court stated, "This is substantially what the trial judge did in the case at bar."). The Valentine Court explained:

We know of no rule of law or practice which authorizes a trial judge, after a cause has been submitted to him for determination, to search, of his own motion and without the consent of the parties, for extrinsic testimony and circumstances, and apply what he may learn in this way to corroborate the testimony upon one side or to cast discredit on the testimony of the adverse party.

Id. (emphasis added) (quoting Denver Omnibus & Cab Co. v. J.R. Ward Auction Co., 107 P. 1073, 1074 (Colo. 1910)). See also Lillie v. United States, 953 F.2d 1188, 1191 (10th Cir. 1992) ("When a judge engages in off-the-record fact gathering, he essentially has become a witness in the case.").

¶11 In the present case, the trial court viewed the property at the request of Ms. McHenry's counsel[2] and with the consent of the parties. Although Ms. McHenry asserts that "[t]he fact that a party, or parties, consent to the ex parte viewing does not change the outcome of the analysis," we agree, instead, with the Valentine Court's analysis that it is of great importance whether the parties, as here, requested, and consented to, the viewing, or whether, as in Valentine, the trier of fact viewed the premises without the knowledge or consent of the parties. Indeed, in another case cited by Ms. McHenry, the court stated that where the parties have "notice of the judge's intent to view the property and the opportunity to attend" and do not object to that viewing, "[t]hese circumstances remove a direct challenge to the view itself as improper." Tarpley v. Hornyak, 174 S.W.3d 736, 750 (Tenn. Ct. App. 2004).

¶12 Moreover, the Trust and Mr. Roselle, who accurately state in their Answer Brief that Ms. McHenry "provides no Oklahoma authority in regards to the Court's view of real property in a bench trial," refer this Court to Evans v. City of Eufaula, 1974 OK 116, 527 P.2d 329, in which the Oklahoma Supreme Court did not disapprove of the viewing of real property by the trial court, and further concluded that the failure of the trial court to notify the parties of its viewing did not constitute reversible error in that case, stating: "Recognizing that it would have been better practice for the trial court to have viewed the scene after notification to parties[,] we conclude failure to do so in this case did not constitute reversible error." Id. ¶ 35.[3]

¶13 Returning to Valentine, that court stated that "[b]y the great weight of authority" a trial court, when acting as the trier of fact, is authorized to view premises when the viewing is undertaken with the knowledge and consent of the parties. The court emphasized, however, that such a viewing must be for the purpose of "more clearly comprehend[ing] the evidence given," and not for the purpose of procuring new evidence. 257 N.W. at 904.[4] Ms. McHenry acknowledges as much in her appellate brief when she states: "The only legitimate purpose of an inspection is to enable the court to understand the issues and apply the evidence which is properly admitted."[5] Ms. McHenry states that "the most important question . . . [is] . . . what use a judge makes of [the] observations."[6]

¶14 Here, the trial court heard the testimony at trial of six witnesses on behalf of the Trust and Mr. Roselle, and eight witnesses on behalf of Ms. McHenry. The evidence introduced also includes survey plats and several photographs of the disputed boundary line. As quoted above, the trial court stated in its order denying the motion for new trial that it "carefully considered and weighed the testimony of every witness and reviewed fully every exhibit admitted into evidence. After much consideration, the Court simply found the Ewing Trust/Roselle testimony more convincing in light of all the evidence."

¶15 Ms. McHenry attempts to cast doubt on this assertion by pointing out that in the trial court's Findings of Facts and Conclusions of Law (Findings) filed in August 2018, the trial court stated: "While Mr. Doshier, testifying for Ms. McHenry, was certain that he removed the brace post and immediately replaced it with the metal post of the chain link fence, the new fence, nonetheless, is out of place upon viewing the disputed properties and all other properties adjacent thereto." Based on this one sentence in the trial court's lengthy Findings, Ms. McHenry states "it is clear that the District Court based its decision in a large part, if not exclusively, on its observations of the properties in question."

¶16 To the contrary, the trial court's Findings include meticulous summaries of all the witness testimony. Moreover, the trial court also states in its Findings as follows:

All of [the Trust's] witnesses testified that the old barbed wire fence was to the east of the current chain link fence. Dr. Mobley, Mr. Kinder, Mr. Blackwell, and even Mr. Mibb specifically testified that the current standing wooden posts, as depicted in the exhibits, certainly looked to be the corner posts of the old barbed wire fence. Mr. Kinder and Mr. Mibb also testified that they believed the metal gate was located next to the corner post. Mr. Blackwell, most compellingly, testified that he had a conversation with Ms. McHenry about the location of the chain link fence being different than the original barbed wire fence.

Additionally, Mr. Ewing, who had been present in the area prior to the chain link fence being erected, testified that he had marked the boundaries of his Meadows property with metal decorative fencing, such that the apex of that fencing hovered over the property marker.

The trial court then stated: "Upon viewing the disputed properties, Mr. Ewing's decorative fencing lines up with [the Trust's] witnesses' accounts as to the placement of the old barbed wire fence."

¶17 Ms. McHenry, citing Tarpley, states that a party's consent to a judge's view of controverted property "cannot be interpreted as an agreement that the trial court make its decision solely on the basis of [its] personal observations at the view." 174 S.W.3d at 750. With this we agree. However, the trial court in the present case clearly did not make its decision solely on the basis of its personal observations. Instead, the trial court, at the request of Ms. McHenry's counsel and after providing an opportunity for all counsel to attend,[7] inspected the premises for the legitimate purpose of enabling the court to understand the issues and apply the evidence admitted at trial. Consequently, we conclude the trial court did not abuse its discretion in denying Ms. McHenry's motion for new trial.

CONCLUSION

¶18 We conclude the trial court did not abuse its discretion in denying Ms. McHenry's motion for new trial. Therefore, we affirm.

¶19 AFFIRMED.

RAPP, J., and FISCHER, J., concur.

FOOTNOTES

[1] While RCB Bank is listed as a Third-Party Defendant in the pre-trial conference order, the order here refers only to Mr. Roselle.

[2] Counsel for Ms. McHenry stated to the trial court at the end of the trial, "I think it would be helpful for you to see this."

[3] We note that 12 O.S. 2011 § 579 "permits views by juries[.]" Evans, ¶ 19. Section 579 states:

Whenever, in the opinion of the court, it is proper for the jury to have a view of the property which is the subject of litigation, or of the place in which any material fact occurred, it may order[] them to be conducted, in a body, under the charge of an officer, to the place, which shall be shown to them by some person appointed by the court for that purpose. While the jury are thus absent, no person, other than the person so appointed, shall speak to them on any subject connected with the trial.

It is clear from Evans that a trial court, when trying a case without a jury, may also view property which is the subject of litigation, though the better practice is for the trial court to at least notify the parties prior to doing so and, as noted further below, to provide counsel the opportunity to attend the viewing.

[4] In Lillie v. United States, the Tenth Circuit Court of Appeals took issue with this distinction, explaining:

We acknowledge that jurisdictions vary as to whether a view is treated as evidence or simply as an aid to help the trier of fact understand the evidence. However, we believe such a distinction is only semantic, because any kind of presentation to the jury or the judge to help the fact finder determine what the truth is and assimilate and understand the evidence is itself evidence. The United States Supreme Court has stated that the "inevitable effect [of a view] is that of evidence, no matter what label the judge may choose to give it."

953 F.2d at 1190 (footnote omitted) (citation omitted). However, even that court concluded that a viewing is proper if accomplished with the consent of the parties and if counsel are given an opportunity to attend, which occurred in the present case. If not, then, according to the Lillie Court, the viewing is "improper" and is "to be judged by the general standard regarding the erroneous admission of evidence," which "is harmless only if . . . the improper evidence had no effect on the decision." Id. at 1192 (citation omitted).

[5] Ms. McHenry quotes Belmont Nursing Home v. Illinois Department of Public Aid, 439 N.E.2d 511, 514 (Ill. App. Ct. 1982).

[6] Ms. McHenry quotes Risher v. South Carolina Department of Health and Environmental Control, 712 S.E.2d 428, 435 (S.C. 2011) (Toal, C.J., concurring).

[7] "Most authorities agree that it is error for a judge to take a view without providing an opportunity for counsel to attend." Lillie, 953 F.2d at 1190 (citations omitted).






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1974 OK 116, 527 P.2d 329, EVANS v. CITY OF EUFAULA
Discussed
 2017 OK 69, 404 P.3d 843, GRISHAM v. CITY OF OKLAHOMA CITY
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 579, View of Property by Jury
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA