THE BOARD OF SUPERVISORS OF CHEBOYGAN COUNTY. v.
THE SUPERVISOR OF THE TOWNSHIP OF MENTOR,
THE SUPERVISOR OF THE TOWNSHIP OF
NUNDA, AND THE SUPERVISOR OF THE
TOWNSHIP OF TUSCARORA.

*Mandamus—Illegal tax—Duty of supervisor.*

1. The writ of *mandamus* is a discretionary writ, and will not be granted to accomplish a confessedly illegal purpose, even though the officer against whom it is invoked is charged with an express duty under the statute; citing *Common Council v. Schlich*, 81 Mich. 405.

2. A writ of *mandamus* will not be granted to compel a supervisor to spread upon his roll that portion of the county tax certified to him which, while purporting to have been voted for the purchase of a poor farm, is really being raised to aid in securing a location for a tannery in the county.

*Mandamus.* Argued December 2, 1892. Granted in part December 3, 1892, and opinions filed December 23, 1892.

Relator applied for *mandamus* to compel respondents to spread upon the assessment rolls of their several townships the county tax as apportioned for 1891. The facts are stated in the majority opinion.

*Henry G. Dozer*, Prosecuting Attorney, for relator.

*George E. Frost* (*Watts S. Humphrey*, of counsel), for respondents.

GRANT, J. The petition for the writ of *mandamus* in this case is filed by the prosecuting attorney of Cheboygan county in behalf of the relator to compel the respondents to spread upon the assessment rolls of their respective townships the county taxes apportioned thereto for the

year 1891. The respondents refused to spread such taxes, for the reason that the apportionment was fraudulent, illegal, and void.

The facts upon which they based such refusal, as set up in their answers, are as follows: Certain citizens of the county of Cheboygan petitioned the board of supervisors to vote financial aid to secure the location for a tannery in the county. A resolution was offered before the board to appropriate $2,000 for that purpose. Knowing that such action upon the part of the board would be illegal, and would vitiate every tax in the county, such resolution was finally withdrawn, and another resolution substituted in its place to expend $2,000 for the purchase of 14 acres of land for a county poor farm. The piece of land so ordered purchased was never intended to be used for that purpose; was wild, uncultivated, and not accessible by any road, and was comparatively worthless. This resolution was passed by a majority of the board, the respondents voting against it. An order was ordered drawn by the chairman and clerk of the board for that amount, with the evident purpose of speedily accomplishing this illegal object, and preventing the interference of the courts to enjoin it. The board instructed their temporary chairman—the regular chairman being absent at that meeting—to sign the order, and deliver it. The resolutions to accomplish this object were carried by a vote of 14 to 5. The minority filed a written protest against such action, setting forth the facts and their reasons for the protest. This $2,000 was included in the county taxes to be raised, and apportioned among the various townships.

These facts are admitted by the relator; but it is insisted that the provisions of the statute requiring the supervisors to spread the tax upon their respective assessment rolls are mandatory, and that the duty of the supervisors was imperative to spread the tax, and leave the tax-

payers to the remedy provided by law for relief against illegal taxation. It must be conceded that this is ordinarily the rule, and that, where the board of supervisors has acted in good faith in determining the amount of county tax to be raised, and in apportioning it to the several townships, the supervisors must proceed to place it upon their respective rolls. But it must be remembered that the writ of *mandamus* is a discretionary writ, and that those who invoke its aid must come into court with clean hands. This writ cannot be invoked to accomplish a confessedly illegal purpose, even though the officer against whom it is invoked is charged with an express duty under the statute. Similar misconduct on the part of municipal officers was involved in *Common Council v. Schlich*, 81 Mich. 405. It was there said:

"Courts cannot be successfully invoked to assist parties in taking advantage of their deliberate wrong and willful misconduct."

The action of the petitioner in the present case was not only intentionally and willfully fraudulent, but it was criminal, and a gross outrage upon the rights of tax-paying citizens.

It would, in my judgment, be a reproach upon the law if courts were, under the circumstances of this case, compelled to issue the writ of *mandamus*, and thereby compel the imposition of a fraudulent tax. The circumstances must be exceptionally extraordinary which will justify a supervisor in refusing to comply with his statutory duty, but we think the respondents in this case were justified in so doing.

The facts before us show that there is no difficulty in separating the amount of this fraudulent tax from the other. The writ will therefore issue directing the respondents to spread upon their respective rolls the balance of the tax. No costs will be allowed.

McGrath, C. J., and Long, J., concurred with Grant, J.

Montgomery, J.   While agreeing in the main with what is said in the opinion of Mr. Justice Grant, I dissent from the conclusion reached, on the ground that it is not the province of these defending supervisors to question the legality of a tax which has been ordered spread by the board of supervisors, by refusing to obey the mandate of the board, and that, therefore, the question of the legality of such tax is not properly before the Court at this time for consideration.   In my judgment, it would be most unseemly if a supervisor could refuse to spread any tax whatever in his township, upon the ground that the board of supervisors had, in his judgment, exceeded their authority, no matter in how slight a degree. He is not invested with judicial authority to review the action of the board of supervisors.   When the certificate comes to him directing the spreading of a tax, he has no other than a ministerial duty to perform, and it is unseemly for him to assume to exercise any other power.

Durand, J., concurred with Montgomery, J.