ROMULUS CITY TREASURER v WAYNE COUNTY DRAIN
COMMISSIONER

Docket Nos. 31365, 77-24. Submitted December 13, 1977, at Detroit.—
Decided November 6, 1978. Leave to appeal applied for.

John B. Lewkowicz, Treasurer for the City of Romulus, and
treasurers of other municipal corporations in Wayne County
and W. Curt Boller and Paul A. Kraft, as individual taxpayers,
for themselves and others similarly situated, commenced an
action against Charles N. Youngblood, Wayne County Drain
Commissioner, Wayne County Board of Commissioners, County
of Wayne and Wayne County Treasurer. In count I the treasur-
ers sought declaratory and temporary and permanent injunc-
tive relief from 1975 and 1976 special drain assessments. In
count II the named taxpayers on behalf of all taxpayers living
in communities which were assessed either specially or at large
requested a refund of all illegal assessments since 1956.

Defendants' motion for accelerated judgment was granted as
to count II, on the basis that the Tax Tribunal had exclusive
jurisdiction over tax refund claims and, in any event, that the
claims were barred by the applicable statute of limitations; the
motion was denied as to count I, Wayne Circuit Court, John R.
Kirwan, J.

The defendants appeal, by leave granted, the denial of their
motion for accelerated judgment on count I. The plaintiffs
appeal the grant of accelerated judgment on count II. The cases
were consolidated for appeal. *Held:*

1. The trial court correctly ruled that the plaintiffs-treasurers

REFERENCES FOR POINTS IN HEADNOTES

[1] 59 Am Jur 2d, Parties §§ 26-31, 244, 254, 255.
[2] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
    Political Subdivisions §§ 283, 847-849.
   57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 108,
    168 *et seq.*
[3, 4, 8] 51 Am Jur 2d, Limitation of Actions §§ 400, 401, 417-420.
   56 Am Jur 2d, Municipal Corporations, Counties, and Other Politi-
    cal Subdivisions § 680 *et seq.*
[5] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
    Political Subdivisions § 846 *et seq.*
[7] 52 Am Jur 2d, Mandamus § 39 *et seq.*

had standing to sue because it is settled law in Michigan that a motion to dismiss should not be granted where a plantiff's standing to sue is based upon a disputed question of fact. This continues to be the law when a dismissal is denominated an accelerated judgment.

2. The individual taxpayers must establish extraordinary circumstances indicating the existence of fraudulent conduct on the part of the county drain commissioner in order to maintain their action. If they can prove their allegation of fraud and fraudulent concealment, they would be exempt from the applicable 30-day statute of limitation for commencing an action for refund of taxes paid. Such a determination is a decision of fact which should await a full trial on the merits.

3. It is appropriate that this matter be decided in the circuit court since the Tax Tribunal has not been given general equitable powers.

Affirmed in part and reversed in part.

Bronson, J., dissented. He would hold:

1. The plaintiffs-treasurers have no standing to seek review of the defendants' tax assessments.

2. The individual taxpayers are barred from bringing the action because of the running of the 30-day statute of limitations, which applies even though the assessment complained of may have been illegal or void *ab initio.*

He would reverse as to count I and affirm as to count II.

### Opinion of the Court

1. Judgment—Accelerated Judgment—Motion to Dismiss—Standing—Court Rules.

A defendant's motion to dismiss based on a plaintiff's lack of standing to bring suit should not be granted where the plaintiff's standing to sue is based upon a disputed question of fact; this rule is still applicable when such a dismissal is denominated an accelerated judgment (GCR 1963, 116).

2. Municipal Corporations—Drain Tax Assessments—County Drain Commissioner—Standing to Sue—Exceptionally Extraordinary Circumstances.

Treasurers of municipalities within a county should not, without a full evidentiary trial, be denied standing to seek relief from drain tax assessments allegedly improperly assessed and levied by the county drain commissioner where the treasurers have alleged "exceptionally extraordinary" circumstances as required by Supreme Court case precedent.

3. LIMITATION OF ACTIONS—DRAIN ASSESSMENTS—STATUTE OF LIMITATIONS—TOLLING OF STATUTE—ALLEGATIONS OF ILLEGALITY.

Mere allegations of illegality in the special assessment of taxes for drain construction will not suffice to toll the running of the statute of limitations in actions to recover the assessments paid.

4. TAXATION—SPECIAL ASSESSMENTS—LIMITATION OF ACTIONS—TAXPAYERS' SUIT—FRAUD—BURDEN OF PROOF—STATUTES.

A taxpayers' suit against a county drain commissioner, brought for the refund of special assessments after the running of the applicable 30-day limitations period in which the plaintiffs' complaint alleged fraud and fraudulent concealment, is not barred by the statute of limitations where the plaintiffs can carry their burden of demonstrating fraudulent conduct on the part of the defendant; however, where the plaintiffs fail to show fraud on the part of the defendant, the action should be dismissed as untimely (MCL 280.265, 600.5855; MSA 11.1265, 27A.5855).

5. TAXATION—INJUNCTIVE RELIEF—ASSESSMENTS—TAX TRIBUNAL—EXCLUSIVE JURISDICTION—CIRCUIT COURT—STATUTES.

It is appropriate that actions seeking injunctive relief from tax assessments be decided in circuit court despite the Tax Tribunal's purported exclusive jurisdiction over tax matters, because the Tax Tribunal has not been given general equitable powers (MCL 205.701 *et seq.;* MSA 7.650[1] *et seq.).*

DISSENT BY BRONSON, J.

6. TAXATION—MUNICIPAL CORPORATIONS—MUNICIPAL TREASURERS—STANDING—SPECIAL DRAIN ASSESSMENT—DUTY TO REMIT TAXES COLLECTED—STATUTES.

*The treasurers of the municipalities within a county have no standing to seek review of special drain assessment by the county drain commissioner because the treasurers have a statutory duty to remit collected taxes to the county treasurer and have no discretionary authority as to the payment of collected taxes (MCL 211.54, 280.265; MSA 7.98, 11.1265).*

7. MANDAMUS—EXTRAORDINARY WRITS—DISCRETION OF COURT.

*Mandamus is a discretionary writ and a court, in its discretion, may refuse to enforce a ministerial duty in extraordinary circumstances.*

8. TAXATION—LIMITATION OF ACTIONS—DRAIN TAXES—ACTION FOR
   REFUND—ILLEGAL ASSESSMENT—STATUTES.

   There is a 30-day limitation period for commencing an action to
   recover drain taxes which have been paid; this limitation
   period applies even though an assessment complained of may
   have been illegal or void ab initio (MCL 280.265; MSA 11.1265).

*Harry S. Ellman,* for plaintiffs.

*Aloysius J. Suchy,* Corporation Counsel, and
*John K. Godre,* Assistant Corporation Counsel, for
defendant.

Before: N. J. KAUFMAN, P.J., and BRONSON and
D. E. HOLBROOK, JJ.

D. E. HOLBROOK, J. Our brother, Judge BRONSON,
clearly sets out the facts of the instant case in his
dissent. The plaintiffs' standing to raise their alle-
gations of fraud in the court below must be up-
held. It is clear that there is no authority directly
on point in this matter and our disagreement with
the dissent on this issue is merely a disagreement
regarding the extent of irregularity implied in the
plaintiffs' allegations. The dissent is certainly cor-
rect when it notes that the treasurers' statutory
duties with regard to the collection of drain assess-
ments are merely ministerial. MCL 211.43; MSA
7.84. In addition, the treasurers are indemnified by
the county against any action arising out of irregu-
larity in the collection of drain taxes. MCL
280.265; MSA 11.1265.

The line of cases including *The County Trea-
surer of Berrien v Bunbury,* 45 Mich 79; 7 NW 704
(1881), *Scholtz v Smith,* 119 Mich 634; 78 NW 668
(1899), and *Mayor of City of Dearborn v Dearborn
Retirement Board of Trustees,* 315 Mich 18; 23
NW2d 186 (1946), does suggest that the treasurers'
standing in this case may not be "commensurate

with their public trusts and duties". Nevertheless, we hold that careful attention must be accorded the plaintiffs' allegations of fraudulent conduct, thereby placing greater emphasis and a broader interpretation upon the phrase "public trust" as used in *Bunbury, Scholtz,* and *Dearborn Retirement Board, supra.* Nothing in these cases dictates that standing shall only lie to fulfill "discretionary" duties of public officers and we hold that "public trust" includes the treasurers' duties as fiduciaries in the management and application of funds. 62 CJS, Municipal Corporations, § 697, pp 1392–1395.

The treasurers-plaintiffs' complaint basically alleges that defendant Wayne County Drain Commission has fraudulently utilized tax funds which are statutorily earmarked for drain construction work to cover administrative expenses; by statute, such administrative expenses should come from the defendant county's general fund. MCL 280.196; MSA 11.1196. This statute permits the county drain commissioner to assess landowners benefitted by drain maintenance and repair costs up to $800 per mile, without petition, provided the repairs have been performed within the previous two years.

The plaintiffs-treasurers' complaint alleged that the work for which the contested taxes were assessed was not performed within the last two years; that the assessments exceeded the statutory maximum and were not proportioned properly; that proper notice was not given; and finally, that the special assessments were not being used to reimburse the Drain Revolving Fund at all, but rather were used to cover administrative expenses. In *Drain Commissioner of the County of Huron v Supervisor of the Twp of Chandler,* 90 Mich 278,

279; 51 NW 282 (1892), the Court refused to issue a writ of mandamus to compel a township supervisor to assess a drain tax. According to the Court: "The proceedings being so defective that no legal drain could be laid out, the supervisor was not in the wrong in refusing to assess the tax." Similarly, such a writ was denied in *The Board of Supervisors of Cheboygan County v The Supervisor of the Twp of Mentor,* 94 Mich 386, 388; 54 NW 169 (1892), on the grounds that it:

"[C]annot be invoked to accomplish a confessedly illegal purpose, even though the officer against whom it is invoked is charged with an express duty under the statute.

\*   \*   \*

"The circumstances must be exceptionally extraordinary which will justify a supervisor in refusing to comply with his statutory duty, but we think the respondents in this case were justified in so doing."

It is settled law in Michigan that a motion to dismiss should not be granted where the plaintiff's standing to sue is based upon a disputed question of fact. *Watts Construction Co v Joint Clutch & Gear Service, Inc,* 325 Mich 548; 38 NW2d 919 (1949). This continues to be the law under GCR 1963, 116, when such a dismissal is denominated an accelerated judgment, since Rule 116 was not intended to be a "radical departure from past practice". 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 336.

In the instant case such "exceptionally extraordinary" circumstances as required by the Supreme Court in *Huron County Drain Commissioner* and *Cheboygan County Supervisors* are alleged and this Court will not deny the plaintiffs-treasurers' standing to seek relief, even affirmative relief,

without a full evidentiary trial. In much the same manner, the individual taxpayers' standing in the instant case depends upon whether they can establish extraordinary circumstances indicating the existence of fraudulent conduct on the part of the county drain commission. The Supreme Court cases of *Twp of Norton v Cockerill,* 265 Mich 405; 251 NW 543 (1933), and *Brooks v County of Oakland,* 268 Mich 637; 256 NW 576 (1934), clearly indicate that mere allegations of illegality will not suffice to toll the running of the statute of limitations. Neither of these opinions had occasion to consider the impact of allegations of fraudulent conduct.

Under MCL 600.5855; MSA 27A.5855, the taxpayers' complaint in the instant suit alleged *fraud and fraudulent concealment,* which, if proven, would exempt the plaintiffs-taxpayers from the 30-day statute of limitations under MCL 280.265; MSA 11.1265. Whether or not MCL 600.5855 applies to save the individual plaintiffs' actions in the instant case depends upon whether plaintiffs sustain their allegations of fraud at trial. If they should carry the burden of demonstrating fraudulent conduct on the part of the defendants, the plaintiffs' action is timely. If the plaintiffs fail to show fraud on the part of the defendants, their action must be dismissed as not timely under MCL 280.265. Such a determination is clearly a decision of fact which should await a full trial on the merits. *Cf. Corley v Logan,* 35 Mich App 199; 192 NW2d 319 (1971).

We note that since the Tax Tribunal has not been given general equitable powers, it is appropriate that this matter be decided in circuit court. Despite the Tax Tribunal's purported exclusive jurisdiction, MCL 205.701, *et seq.;* MSA 7.650(1), *et*

*seq.,* where relief is sought which only a court of general equitable jurisdiction can provide, the action may properly be brought before such court.

Affirmed in part and reversed in part.

N. J. KAUFMAN, P.J., concurred.

BRONSON, J. *(dissenting).* Plaintiffs (city and township treasurers and individual taxpayers) filed a two-count complaint in Wayne County Circuit Court on July 2, 1976. Count I, brought by township and city treasurers, sought declaratory and temporary and permanent injunctive relief from 1975 and 1976 special drain assessments. Plaintiffs-treasurers alleged that the defendant, Wayne County Drain Commissioner, was without jurisdiction to levy such taxes for the reasons that (i) the work was not in fact performed within two years prior to the assessments, (ii) the special assessments exceeded $800 per mile, (iii) the special assessments were not in proportion to the original proportions for costs, (iv) no notices of the assessments were given to the taxpayers by the defendant drain commissioner, and (v) the special assessments were not being used to replenish the Drain Revolving Fund for work actually performed but rather were being used to pay the defendant-appellee drain commissioner's office's administrative expenses, which should legally be paid from the defendant-appellee Wayne County's General Fund.[1]

Count II of the complaint was brought as a class action by the named taxpayers on behalf of all taxpayers living in communities which were as-

---

[1] *See* MCL 280.196; MSA 11.1196, which was amended subsequent to the trial court's order by 1976 PA 344, effective December 19, 1976. At issue is over $400,000 collected by plaintiffs-treasurers which is now being held in escrow pending the disposition of this case.

sessed either specially or at large. It incorporates the grounds on which count I was based. Refund of all illegal taxes assessed since 1956 was the relief requested.

Defendants responded by moving for accelerated judgment on four bases. The first ground alleged that this suit was primarily a tax refund suit and that exclusive jurisdiction was vested in the Tax Tribunal.[2] The second ground alleged that "the six plaintiff-treasurers who comprise Count I of the complaint possess no legal standing to challenge these drain taxes". The third ground alleged that the named plaintiffs of the second count had no cause of action "because they are barred by the statute of limitations[3] * * * and * * * cannot represent the taxpayers in their communities". The fourth ground alleged that a class action "is improper, simply because there is no (common) issue of law or fact in this case".

The trial court granted defendants' motion as to Count II, holding that the Tax Tribunal had exclusive jurisdiction over tax refund claims and, in any event, that the claims were barred by the applicable statute of limitations.[4] The motion as to count I was denied. The trial court held that the treasurers had standing and that the Tax Tribunal did not have exclusive jurisdiction over a suit seeking declaratory and injunctive relief.

Leave to appeal the decision on count I was

---

[2] See MCL 205.701 et seq.; MSA 7.650(1) et seq.

[3] See MCL 280.265; MSA 11.1265, which provides in part:

"No suit shall be instituted to recover any drain tax or money paid or property sold therefor, or for damages on account thereof, unless brought within 30 days from the time of payment of such money to, or sale of such property by, the collecting officer; and if such tax shall be paid under protest the reasons therefor shall be specified, and the same procedure observed as is or may be required by the general tax law."

[4] See note 3, supra.

granted and that case was consolidated with plaintiffs' appeal as to count II.

### Standing of plaintiffs-treasurers to bring count I

The trial court held that plaintiffs in count I had standing to seek declaratory and injunctive relief on the basis of *Mayor of City of Dearborn v Dearborn Retirement Board of Trustees*, 315 Mich 18; 23 NW2d 186 (1946), and *The County Treasurer of Berrien v Bunbury*, 45 Mich 79; 7 NW 704 (1881).

The rule in Michigan is that: " '[A]ll public officers, though not expressly authorized by statute, have a capacity to sue commensurate with their public trusts and duties.' " *Mayor v Dearborn Retirement Board, supra,* at 24, quoting *Berrien County Treasurer v Bunbury, supra,* at 84.

In *Mayor v Dearborn Retirement Board, supra,* the Mayor of Dearborn, in his official capacity, sought a declaratory judgment as to the validity of an appropriation included in the proposed budget by defendant board. The city council presented a proposed budget including the appropriation. The mayor vetoed that appropriation, but his veto was overridden by council. In response to the mayor's suit for declaratory relief, defendant asserted that the mayor was not a proper party to sue for a declaration of rights. The Supreme Court held that the mayor was a proper party, reasoning that as the mayor had the power and the duty under the city charter to approve or reject any item in the annual budget, he was a proper party to seek judicial resolution of the controversy.

The key to that decision seems to have been the discretionary authority of the mayor to approve or reject the contested item coupled with his duty to

approve a budget for the city. Obviously, no direct
financial stake in the outcome was required by the
court.

In the case at bar, plaintiffs-treasurers have a
statutory duty to remit the collected taxes to the
county treasurer. MCL 211.54; MSA 7.98 provides
that:

"Within 20 calendar days after the time specified in
his warrant, the township treasurer or other collecting
officer shall pay to the county treasurer all state and
county taxes collected, and within the same time shall
make his statement of unpaid taxes upon real and
personal property as required in section 55."[5]

Plaintiffs-treasurers in count I have no discretion-
ary authority as to the payment of collected taxes,
see *Berrien County Treasurer v Bunbury, supra.*
Therefore, *Mayor v Dearborn Retirement Board,*
*supra,* compels a result opposite to that reached by
the trial court. Absent any discretionary authority,
the treasurers have no standing to seek review of
defendants' tax assessments.

Plaintiffs rely on cases holding that, in extraor-
dinary circumstances, mandamus will not issue to
force a treasurer to comply with his statutory duty
to spread an assessment on the tax rolls. See, *e.g.,*
*Scholtz v Smith,* 119 Mich 634; 78 NW 668 (1899),
*Laubach v O'Meara,* 107 Mich 29; 64 NW 865
(1895), *The Board of Supervisors v The Supervisors*
*of the Twp of Mentor,* 94 Mich 386; 54 NW 169
(1892). However, these cases do not stand for the
proposition that a treasurer has discretionary au-
thority with respect to spreading and collecting
taxes. They hold that mandamus is a discretionary
writ and that the court, in *its* discretion, may

---

[5] MCL 280.265; MSA 11.1265 provides that drain taxes are to be
collected and remitted in the same manner as general taxes.

refuse to enforce a ministerial duty in extraordinary circumstances. These cases reinforce the point that the treasurers' duties are ministerial and that they have no discretionary authority to refuse to remit taxes collected. Therefore, under *Mayor v Dearborn Retirement Board, supra,* they have no standing to seek review of defendants' actions. Thus it is unnecessary to reach the jurisdictional issue.

It should also be noted that 1976 PA 344, amending MCL 280.196; MSA 11.1196, eliminates the need for prospective injunctive or declaratory relief on the legality of assessing administrative costs as incidental maintenance expenses. The amendment clearly prohibits such assessment. Essentially then, this suit is one for the refund of allegedly illegally assessed drain taxes, which was sought in count II of the complaint.

### *Maintenance of class action for tax refund in circuit court*

In count II of the complaint, two taxpayers who paid assessed taxes sought recovery individually and on behalf of some 60,000 taxpayers. The trial court dismissed count II, holding that the Tax Tribunal has exclusive jurisdiction over property tax refund suits and, in any event, the suits for refunds were untimely, being filed after the 30-day statute of limitations on such suits.[6]

---

[6] *See* note 3, *supra.* Plaintiffs allege that the 30-day limitation does not apply to the instant case where "fraud" or "constructive fraud" have been alleged and/or where defendants have engaged in "fraudulent concealment".

Plaintiffs, however, cannot avoid the clear limitation on refund suits contained in § 265 by engaging in imaginative labeling. What they want is a refund of taxes paid. Section 265 says that a suit for a refund of taxes paid must be brought within 30 days. This section applies to invalid, illegal assessments. *See Twp of Norton v Cockerill,* 265 Mich 405; 251 NW 543 (1933). Therefore, plaintiffs' suit for a refund was untimely, regardless of how the action is designated.

The trial court correctly held that the 30-day limitation on drain tax refund suits contained in MCL 280.265; MSA 11.1265 prevents the individual plaintiffs in count II from obtaining a refund. This limitation period applies even though the assessment complained of may have been illegal or void *ab initio. Brooks v County of Oakland,* 268 Mich 637; 256 NW 576 (1934), *Twp of Norton v Cockerill,* 265 Mich 405; 251 NW 543 (1933).

The trial court did not address the question of certification of the instant class. See *Grigg v Michigan National Bank,* 72 Mich App 358; 249 NW2d 701 (1976). However, the record discloses that the putative representatives did not bring suit for a refund within the requisite 30-day period. Plaintiffs do not maintain that they or any other member of the "class" can satisfy that requirement. Therefore the trial court's dismissal of count II was proper.[7]

I would affirm as to count II (Docket No. 77-24) and reverse as to count I (Docket No. 31365).

---

[7] Due to the resolution of the 30-day limitation issue, the question of whether the Tax Tribunal has exclusive jurisdiction over class action suits for property tax refunds need not be addressed.