JOHNSON v STATE OF MICHIGAN

Docket No. 55889. Submitted November 19, 1981, at Detroit.—Decided
February 18, 1982.

Robert K. Johnson, Richard Neaton, and Monica Moffat, on
behalf of themselves and all others similarly situated, brought
suit against the State of Michigan, the Michigan Tax Tribunal,
Wayne County, the City of Detroit, and others in Wayne
Circuit Court for the purpose of redressing alleged past and
continuing unconstitutional, unlawful, arbitrary, discrimina-
tory, fraudulent and willful practices and policies which had
resulted in unequal and inequitable assessments and collection
of property taxes throughout the City of Detroit and Wayne
County. The plaintiffs sought declaratory judgments that appel-
late process before the board of review was illegal, that the Tax
Tribunal was without jurisdiction in this matter and that the
Tax Tribunal lacked jurisdiction to hear appeals based upon
equitable actions or containing constitutional questions. Fur-
ther, they sought injunctions, a writ of superintending control
to stay any Tax Tribunal proceedings, a writ of mandamus
ordering defendants to establish state equalized values for real
property, and monetary damages. The defendants moved for
reassignment of the case to another judge and accelerated
judgment alleging that the trial court lacked subject matter
jurisdiction of the action. The circuit court, William J. Giovan,
J., denied the defendants' motions. The defendants appeal by
leave granted. *Held:*

The Tax Tribunal has exclusive jurisdiction over the claims
in the present case. The claims against the validity of the

REFERENCES FOR POINTS IN HEADNOTES

[1] [No reference]
[2, 3, 11] 72 Am Jur 2d, State and Local Taxation § 787.
[4, 5, 8, 10] 72 Am Jur 2d, State and Local Taxation §§ 799-801.
[6] 72 Am Jur 2d, State and Local Taxation § 800.
[7] 71 Am Jur 2d, State and Local Taxation § 162.
[9] 72 Am Jur 2d, State and Local Taxation §§ 731-738.
[10] 22 Am Jur 2d, Declaratory Judgments § 37.

Tax questions as proper subject of action for declaratory judgment.
11 ALR2d 359.

increased assessments, including a challenge to the data used, equalization factor and inadequate hearing, constitute an attack on the legal validity of the assessments. The proper forum for further administrative review is the Tax Tribunal. The Tax Tribunal has power to grant the remedies requested by the plaintiff by including declaratory judgments and other equitable relief. The error alleged from the denial of the defendants' motion for reassignment is moot.

Reversed.

1. JUDGMENTS — ACCELERATED JUDGMENTS.

All well-pleaded facts of the nonmoving party must be accepted as true for purposes of a motion for accelerated judgment.

2. TAXATION — TAX TRIBUNAL.

The Tax Tribunal is a quasi-judicial agency and it has exclusive and original jurisdiction over proceedings for direct review of a final decision, finding, ruling, determination, or order of an agency relating to assessments, valuation, rates, special assessments, allocation, or equalization, under property tax laws, and proceedings for refund or redetermination of a tax under the property tax laws (MCL 205.731; MSA 7.650[31]).

3. TAXATION — ASSESSMENT DISPUTES.

An assessment dispute regarding property valuation must be protested before the board of review before the Tax Tribunal can acquire jurisdiction (MCL 205.735[1]; MSA 7.650[35]).

4. TAXATION — TAX TRIBUNAL.

The Tax Tribunal's powers include, but are not limited to: (1) affirming, reversing, modifying or remanding a final decision, finding, ruling, determination, or order of an agency; (2) ordering the payment or refund of taxes in a matter of which it may acquire jurisdiction; (3) granting other relief or issuing writs, orders, or directives which it deems necessary or appropriate in the process of disposition of a matter of which it may acquire jurisdiction; and (4) promulgating rules for the implementation of the tax tribunal act, including rules for practice and procedure before the Tax Tribunal (MCL 205.732; MSA 7.650[32]).

5. TAXATION — TAX TRIBUNAL.

The Tax Tribunal has the authority to order or direct the taxing agency to take no further action relating to a disputed tax assessment until the merits of the controversy have been determined; the fact that the tribunal as a quasi-judicial agency has no contempt powers does not diminish the validity and

binding force of its writs, orders or directives; enforcement is obtainable by application to the circuit court.

6. TAXATION — TAX TRIBUNAL.

The Tax Tribunal has equitable jurisdiction over questions relating to the validity of property tax assessments.

7. TAXATION — ASSESSMENT.

For tax purposes, property must be assessed at 50% of true cash value and assessments must be equalized at the county and state levels; property tax assessments must be uniform; review from alleged deficiencies in those instances is before the Tax Tribunal (MCL 209.2, 211.27[4], 211.34; MSA 7.27, 7.52, 7.602).

8. TAXATION — ASSESSMENT.

A claim that improprieties in the tax assessment process were the result of discriminatory conspiratorial action should not divest the Tax Tribunal of jurisdiction to review the assessments; if the equalization factor was improperly applied, the Tax Tribunal may make its own determination and has the power to grant any appropriate relief (MCL 205.732, 205.737; MSA 7.650[32], 7.650[37]).

9. TAXATION — BOARDS OF REVIEW.

Alleged failures by a board of review to equalize the assessed values of property and fraudulent certification of the assessment rolls are matters dealing with property assessment and are within the exclusive jurisdiction of the Tax Tribunal; incorrect rolls should be corrected (MCL 205.755; MSA 7.650[55]).

10. TAXATION — TAX TRIBUNAL.

The Tax Tribunal may redetermine the assessments and grant appropriate relief where a tax was discriminatory or the local tax officials committed fraud; declaratory judgments and other equitable relief are within the power of the Tax Tribunal to grant and the relief of a refund is within the exclusive jurisdiction of the Tax Tribunal (MCL 205.731[b], 205.732[b]; MSA 7.650[31], 7.650[32]).

11. TAXATION — TAX TRIBUNAL.

A decision of the Tax Tribunal may be reviewed for fraud, errors of law or the adoption of wrong principles.

*Miller, Cohen, Martens & Sugerman, P.C.,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Richard R. Roesch* and *Ross H. Bishop,* Assistants Attorney General, for the State of Michigan.

*George H. Cross,* Corporation Counsel, and *Robert G. Schuch,* Assistant Corporation Counsel, for Wayne County.

*Sylvester Delaney,* Deputy Corporation Counsel, and *Robert F. Rhoades* and *Peter W. Macuga, II,* Assistants Corporation Counsel, for the City of Detroit.

Before: CYNAR, P.J., and V. J. BRENNAN and H. E. DEMING,\* JJ.

CYNAR, P.J. Defendants appeal by leave granted from an order entered on September 26, 1980, denying their motion for reassignment and from an order entered on November 13, 1980, denying their motion for accelerated judgment, pursuant to an October 24, 1980, bench opinion. We reverse.

Plaintiffs brought a class action on behalf of persons living in various neighborhoods in the City of Detroit "for the purpose of redressing past and continuing unconstitutional, unlawful, arbitrary, discriminatory, fraudulent and willful practices and policies which have resulted in unequal and inequitable assessments and collection of property taxes throughout the City of Detroit and Wayne County".

The relief sought included: declaratory judgments that appellate process before the board of review was illegal, that the Michigan Tax Tribunal was without jurisdiction in this matter, that the Tax Tribunal lacked jurisdiction to hear ap-

---

\* Circuit judge, sitting on the Court of Appeals by assignment.

peals based upon equitable actions or containing constitutional questions; injunctions; a writ of superintending control to stay any Tax Tribunal proceedings; a writ of mandamus ordering defendants to establish state equalized values for real property; and monetary damages.

Defendants' motion for reassignment, which was denied, claimed that another case arose out of the same transactions and occurrences and that the plaintiffs in both cases comprised the same class. The previous case was disposed of by granting a motion for accelerated judgment in favor of the defendants. Thus, defendants sought a reassignment to the judge in that case.

Defendants' motion for accelerated judgment was heard on October 24, 1980. Defendants argued that exclusive and original jurisdiction over any proceeding under the property tax laws was in the Tax Tribunal. Defendants further argued that there was no specific allegation of wrongdoing by the Tax Tribunal to warrant naming it as a party. Defendants claimed that the circuit court did not have jurisdiction to exercise superintending control over the Tax Tribunal.

Plaintiffs argued that the Tax Tribunal did not have authority to hear constitutional claims. They noted that the complaint included a claim based upon the Civil Rights Act of 1871, 42 USC 1983. Counsel for the plaintiffs stated that the basis of the suit was that defendants had acted together in a conspiracy to assess taxes in certain neighborhoods at a constitutionally impermissible high rate and discriminated against those persons in comparison to other taxpayers. Plaintiffs further argued that the Tax Tribunal was a party to the scheme of discriminatory tax valuation.

The circuit court stated that it would be difficult

for the Tax Tribunal to determine the matter since it was a party. Further, the Tax Tribunal was not the appropriate forum to determine whether government officials performed the duties they are required by law to perform. The mere fact that relief may affect some tax assessments would not mean that the Tax Tribunal was the proper forum. Defendants inquired about the valuation issues and whether they may be separated. The court stated it was not prepared to rule on that question and then denied the motion in its entirety.

Defendants offered two motions for accelerated judgment. One motion was brought by the Tax Tribunal, apparently alleging lack of personal jurisdiction, GCR 1963, 116.1(1), and the other was a motion raised on behalf of all defendants alleging lack of subject matter jurisdiction, GCR 1963, 116.1(2). The issue on appeal concerns the denial of the motion alleging lack of subject matter jurisdiction.

All well-pleaded facts of the nonmoving party must be accepted as true for purposes of a motion for accelerated judgment, *Robards v Estate of Kantzler,* 98 Mich App 414, 416; 296 NW2d 265 (1980).

The crux of this issue deals with whether the Tax Tribunal has equity jurisdiction. This question has been addressed under various circumstances by this Court. Once that determination is made, the complaint must be examined to determine whether the allegations confer jurisdiction in the Tax Tribunal.

The Tax Tribunal is a quasi-judicial agency, MCL 205.721; MSA 7.650(21), *Edros Corp v Port Huron,* 78 Mich App 273, 277; 259 NW2d 456 (1977).

The exclusive jurisdiction of the Tax Tribunal is set forth in the Tax Tribunal Act:

"Sec. 31. The tribunal's exclusive and original jurisdiction shall be:

"(a) A proceeding for direct review of a final decision, finding, ruling, determination, or order of an agency relating to assessment, valuation, rates, special assessments, allocation, or equalization, under property tax laws.

"(b) A proceeding for refund or redetermination of a tax under the property tax laws." MCL 205.731; MSA 7.650(31).

"Sec. 41. A person or legal entity which, immediately before the effective date of this act, was entitled to proceed before the state tax commission or circuit court of this state for determination of a matter subject to the tribunal's jurisdiction, as provided in section 31, shall proceed only before the tribunal." MCL 205.741; MSA 7.650(41).

See also MCL 205.779; MSA 7.650(79), which provides that any proceeding relating to state income tax and other taxes shall be before the Tax Tribunal.

The Tax Tribunal also determines the right to tax refunds:

"Sec. 74. The right to sue any agency for refund of any taxes other than by proceedings before the tribunal is abolished as of September 30, 1974. If a tax paid to an agency is erroneous or *unlawful,* it shall not be requisite that the payment be made under protest in order to invoke a right to refund by proceedings before the tribunal." (Emphasis added.) MCL 205.774; MSA 7.650(74).

In the case of an assessment dispute regarding property valuation, the assessment must be protested before the board of review before the Tax

Tribunal can acquire jurisdiction. MCL 205.735(1); MSA 7.650(35).

The powers of the Tax Tribunal are:

"Sec. 32. The tribunal's powers include, but are not limited to:

"(a) Affirming, reversing, modifying, or remanding a final decision, finding, ruling, determination, or order of an agency.

"(b) Ordering the payment or refund of taxes in a matter of which it may acquire jurisdiction.

"(c) Granting other relief or issuing writs, orders, or directives which it deems necessary or appropriate in the process of disposition of a matter of which it may acquire jurisdiction.

"(d) Promulgating, pursuant to Act No. 306 of the Public Acts of 1969, as amended, being sections 24.201 to 24.315 of the Michigan Compiled Laws, rules for the implementation of this act, including rules for practice and procedure before the tribunal." MCL 205.732; MSA 7.650(32).

The Tax Tribunal has exclusive jurisdiction over any tax-related matter arising under property tax laws and has broad implementation powers. The question of the scope of equity jurisdiction has been addressed in recent cases.

In *Edros, supra,* the plaintiff challenged the creation of a special assessment district. Relief sought included a temporary and permanent restraining order. The lower court granted defendant's motion for accelerated judgment on the basis that the Tax Tribunal had exclusive jurisdiction. This Court agreed, and in citing the above-quoted statutes, stated:

"The tax tribunal is a quasi-judicial agency. Such administrative bodies lack judicial powers, and do not ordinarily adjudicate constitutional claims. We, never-

theless, find that the instant controversy falls squarely within the jurisdiction of the tax tribunal.

"MCL 205.731; MSA 7.650(31) grants the tribunal exclusive jurisdiction to review directly final decisions regarding special assessments. Additionally, the powers of the tribunal are extensive and include the authority to issue the relief requested by plaintiff.

*    *    *

"Thus, upon a proper showing the tribunal has the authority to order or direct the taxing agency to take no further action relating to a disputed tax assessment until the merits of the controversy have been determined. The fact that the tribunal, as a quasi-judicial agency, has no contempt powers does not diminish the validity and binding force of its writs, orders or directives. Enforcement is obtainable by application to the circuit court.

"Plaintiff's claim that the special assessment is confiscatory is similarly within the jurisdiction of the tribunal. To contend that the special assessment is confiscatory is merely to assert in constitutional terms the argument that the assessment is without foundation." (Citations omitted; footnote omitted.) *Edros, supra,* 277-279.

In *Xerox Corp v Kalamazoo,* 76 Mich App 150; 255 NW2d 797 (1977), the plaintiff challenged the method of valuation used by the assessor in valuing machines owned and leased by the plaintiff. Plaintiff paid the taxes under protest and sued for a refund. The Court reversed the Tax Tribunal conclusion that it was without jurisdiction:

"Plaintiff's lawsuits, which challenged the legality and constitutionality of the taxes levied by defendant, were previously maintainable before a circuit court under § 53 of the General Property Tax Act. Accordingly, the tribunal has jurisdiction to entertain these actions and it erred in failing to recognize that jurisdiction. MCL 205.731, 205.741; MSA 7.650(31), 7.650(41).

*Emmet County v State Tax Comm* [397 Mich 550; 244 NW2d 909 (1976)]." *Xerox, supra,* 153-154.

*Romulus City Treasurer v Wayne County Drain Comm'r,* 86 Mich App 663; 273 NW2d 514 (1978), *lv gtd* 406 Mich 976 (1979), relied upon by plaintiffs here, is the only published case to depart from the above conclusions. In *Romulus,* the plaintiffs sought declaratory and injunctive relief from special drain assessments. In a brief discussion of the jurisdiction issue, this Court stated:

"We note that since the Tax Tribunal has not been given general equitable powers, it is appropriate that this matter be decided in circuit court. Despite the Tax Tribunal's purported exclusive jurisdiction, MCL 205.701 *et seq.;* MSA 7.650(1) *et seq.,* where relief is sought which only a court of general equitable jurisdiction can provide, the action may properly be brought before such court." *Romulus, supra,* 669-670.

This conclusion has not been followed in subsequent cases. In *State Treasurer v Eaton,* 92 Mich App 327, 332; 284 NW2d 801 (1979), this Court held that where a taxpayer "asserted a tenable claim of fraud" as defined in MCL 211.76; MSA 7.122, a review of the claim by the Tax Tribunal was proper. Also, in *Anderson v Selma Twp,* 95 Mich App 112, 115; 290 NW2d 97 (1980), this Court approved a circuit court decision dismissing the claim of the plaintiffs therein on grounds of lack of subject matter jurisdiction, noting that a claim for injunctive relief against a special assessment was within the tax tribunal's exclusive purview. In *Eyde v Lansing Twp,* 105 Mich App 370; 306 NW2d 797 (1981), the plaintiffs challenged the validity of special assessments. Plaintiffs alleged, *inter alia,* that a section of the drain code was

unconstitutional, that the assessment be declared void, that the township be enjoined, and that the assessment was invalid for procedural irregularities, gerrymandering and factual errors.

This Court first concluded that the Tax Tribunal had exclusive jurisdiction over the plaintiffs' claim of lack of proportionate benefits, rejecting the argument that the Tax Tribunal was without jurisdiction to hear the constitutional questions. The Court then stated:

"But is the Tax Tribunal an improper forum to decide the case because it has no equitable powers? That claim too was raised and rejected by the *Edros* Court which held that the tribunal's powers included ordering a refund of the taxes paid or ' "granting other relief or issuing writs, orders, or directives which it deems necessary or appropriate * * *" '. *Id.,* 278. However, plaintiffs argue that *Romulus City Treasurer v Wayne County Drain Comm'r,* 86 Mich App 663; 273 NW2d 514 (1978), a case decided subsequent to and without mention of *Edros,* controls. There, in a two-to-one decision, the majority said:

\* \* \*

"We do not consider *Romulus* dispositive. Plaintiffs there claimed fraud and misuse of government funds— elements not alleged in the instant case. Furthermore, its decisional value is suspect both because it was a split decision and because the Supreme Court granted leave in 406 Mich 976 (1979), stating:

" 'Leave to appeal granted June 22, 1979. The parties are directed to include among the issues to be briefed whether the Michigan Tax Tribunal is the only forum in which relief can be sought for allegedly illegal drain tax assessments (with consideration of the Court of Appeals determination in *Edros Corp v Port Huron,* 78 Mich App 273 [1977]).'

"Finally, to the extent that *Romulus* is contrary to the decision in *Edros,* this panel rejects the holding in *Romulus.* In our opinion, jurisdiction of the questions raised as to defendant township lay with the Tax Tribu-

nal and not with the circuit court." (Footnote omitted.) *Eyde, supra,* 377-379.

In *Turner v Lansing Twp,* 108 Mich App 103; 310 NW2d 287 (1981), the plaintiff alleged excessive assessment of certain partnership property. There was no protest made to the board of review and plaintiff contended on appeal that an exception should apply to the rule that a protest must be made before the Tax Tribunal acquires jurisdiction. One of the claimed exceptions was constructive fraud by local officials. The doctrine includes the situation when the valuation is purposely made too high through prejudice or reckless disregard of duty or through adoption of a rule designed to operate unequally upon a class and to violate the constitutional rule of uniformity. *Id.,* 111. Regarding jurisdiction, the Court stated:

"Since constructive fraud is an equitable doctrine, calling for the use of a court's equitable powers, *Spoon-Shacket Co, Inc v Oakland County,* 356 Mich 151, 160; 97 NW2d 25 (1959), we must first decide whether the Tax Tribunal possesses general equitable powers. On that question this Court has come to disparate conclusions. Holding that the Tax Tribunal lacks equitable powers is *Romulus City Treasurer v Wayne County Drain Comm'r,* 86 Mich App 663; 273 NW2d 514 (1978). Holding that the Tax Tribunal is vested with equitable powers is *Edros Corp v Port Huron,* 78 Mich App 273; 259 NW2d 456 (1977) and *Eyde v Lansing Twp,* 105 Mich App 370; 306 NW2d 797 (1981). This panel finds the better reasoning to be found in the *Edros-Eyde* opinions and consequently concludes that in the case before us the doctrine of constructive fraud could be employed if timely raised or not otherwise inapplicable." (Footnote omitted.) *Turner, supra,* 111-112.

It seems clear that this Court has not accorded weight to the split decision in *Romulus* and has

instead consistently held that the Tax Tribunal has equitable jurisdiction and may consider constitutional questions relating to the validity of property tax assessments. The question in the present case, then, is to determine the nature of plaintiffs' complaint.

The complaint seeks to redress alleged "unconstitutional, unlawful, arbitrary, discriminatory, fraudulent, and willful practices" resulting in "unequal and inequitable assessments and collection of property taxes", and resulting in a denial of due process and equal protection and in a violation of plaintiffs' rights under the Civil Rights Act. The general thrust of the complaint, then, is an attack on the validity of the property tax assessments, clearly within the jurisdiction of the Tax Tribunal.

Specific averments in the complaint, as defendants contend, support this conclusion. In the preliminary statement, plaintiffs contend that defendants failed to equalize all tax valuations at 50% of true cash value on a uniform basis. The class of persons represented by plaintiffs are those whose property valuations were increased by use of a neighborhood obsolescence factor, or equalization factor, allegedly in excess of 1.00 and not uniformly applied.

It is true that property must be assessed at 50% of true cash value, MCL 211.27(4); MSA 7.27, that assessments must be equalized at the county, MCL 211.34; MSA 7.52, and at state levels, MCL 209.2; MSA 7.602, and that property tax assessments must be uniform, *In re Appeal of General Motors Corp*, 376 Mich 373; 137 NW2d 161 (1965). However, review from alleged deficiencies in those instances is before the Tax Tribunal, see, *e.g., Brittany Park Apartments v Harrison Twp*, 104 Mich App 81; 304 NW2d 488 (1981). A claim that

the improprieties were the result of discriminatory conspiratorial action should not divest the Tax Tribunal of jurisdiction to review the assessments. If the equalization factor were improperly applied, the Tax Tribunal may make its own determination, MCL 205.737; MSA 7.650(37), and has the power to grant any appropriate relief, MCL 205.732; MSA 7.650(32).

Plaintiffs alleged that the factor was based upon improper data. Again, after protest to a board of review, the Tax Tribunal can make that determination. Plaintiffs allege that they did protest before the board of review, which action is required to invoke the jurisdiction of the Tax Tribunal, MCL 205.735(1); MSA 7.650(35). Plaintiffs were first told by the board that "group appeals" would be more expedient. However, on the last day for hearing individual valuation assessment appeals, the board reversed that decision, after being told by the Michigan Tax Commission that group appeals were improper. Plaintiffs, therefore, were allegedly denied hearings or any relief. If plaintiffs had made any protest to the board of review, even in supposedly improper "group appeals", the protest should be sufficient to invoke jurisdiction of the Tax Tribunal. The Tax Tribunal then could remand if the board of review had not made a final decision, or make its own *de novo* decision if the board had made a final decision.

Alleged failure by the board to equalize the assessed values and fraudulent certification of the assessment rolls are matters dealing with property assessment and are within the exclusive jurisdiction of the Tax Tribunal. Incorrect rolls are to be corrected, MCL 205.755; MSA 7.650(55). The earlier-cited cases hold that the Tax Tribunal's jurisdiction includes claims of illegality or fraud relat-

ing to property tax assessments. See *Turner, supra.*

The remainder of the complaint basically alleges that all of the defendants were engaged in a conspiracy to fraudulently circumvent proper equalization.

Phrasing this claim in constitutional terms of discrimination under the Civil Rights Act and violation of due process does not change the nature of the claim as a challenge to property tax assessments. See, *e.g., Eyde, supra.* The constitutionally expressed terms are merely a claim that the property was invalidly assessed, whether by use of a wrong factor, failure of duties or otherwise. If the tax was discriminatory or if the local officials committed fraud, the Tax Tribunal can redetermine the assessments and grant appropriate relief. The remedy requested of declaratory judgments and other equitable relief is within the power of the Tax Tribunal to grant. The relief of a refund clearly is within the exclusive jurisdiction of the Tax Tribunal, MCL 205.731(b), 205.732(b); MSA 7.650(31), 7.650(32).

One concern of the trial court which plaintiffs also assert on appeal is the supposed problem of the Tax Tribunal deciding a case in which it is a defendant. The only specific allegations against the Tax Tribunal are that it participated in a policy of failing to equalize all property at 50% and that it failed to order a reassessment. Such claims appear to be premature. The board of review is charged in the first instance with rendering a valid assessment. Review is available before the Tax Tribunal. The Tax Tribunal has not yet had an opportunity to address the issue. Perhaps the Tax Tribunal would grant the relief requested by plaintiffs. If the Tax Tribunal denies the requested relief, even

if in part because it is part of a conspiracy as alleged by plaintiffs, appeal is by right to this Court. MCL 205.753; MSA 7.650(53). Therefore, the Tax Tribunal should be allowed to decide the validity of the assessments and plaintiffs can then challenge its decision in this Court.

Most of the cases cited by plaintiffs, in fact, deal with the scope of review by a court of an agency determination, see, *e.g., Emmet County v State Tax Comm,* 397 Mich 550; 244 NW2d 909 (1976). A Tax Tribunal decision may be reviewed for fraud, errors of law or the adoption of wrong principles. See *Rogoski v Muskegon,* 101 Mich App 786; 300 NW2d 695 (1980). Therefore, once the Tax Tribunal determines the plaintiffs' allegation of fraud, participation in a conspiracy, or legal errors, including upholding an illegal assessment, such decision would be reviewable by this Court.

The doctrine of exhaustion of administrative remedies, noted by plaintiffs, while a limit on the Tax Tribunal's jurisdiction in requiring protest before the board of review, also is a limit on the jurisdiction of any court as the Tax Tribunal is the last step for administrative review of property tax questions. See, *e.g., Eyde, supra.*

It is noted that *Emmet County, supra,* held that the Tax Tribunal had no jurisdiction over state equalization. The present case does not involve state equalization but individual assessments. The attack on the validity of the assessments is similar to that in *Eaton, supra,* and *Henshaw v State Tax Comm,* 92 Mich App 585; 285 NW2d 382 (1979), which held that the Tax Tribunal had exclusive jurisdiction.

We conclude that the Tax Tribunal has exclusive jurisdiction over the claims in the present case. The claims against the validity of the in-

creased assessments, including a challenge to the data used, equalization factor and inadequate hearing, constitute an attack on the legal validity of the assessments. The proper forum for further administrative review is the Tax Tribunal. Should plaintiffs feel aggrieved from that decision, appeal by right is to this Court.

Based on the determination herein, the error alleged by the trial court's denying the defendants' motion for reassignment is rendered moot.

Reversed in accordance with the opinion herein.