# STATE OF MICHIGAN

# COURT OF APPEALS

MORNINGSIDE COMMUNITY
ORGANIZATION, HISTORIC RUSSELL
WOODS-SULLIVAN AREA ASSOCIATION,
OAKMAN BOULEVARD COMMUNITY
ASSOCIATION, NEIGHBORS BUILDING
BRIGHTMOOR, WALTER HICKS, SPIRLIN
MOORE, DEWHANNEA FOX, DEAUNNA
BLACK, and ROBERT LEWIS,

        Plaintiffs-Appellants,

and

JULIA AIKENS and EDWARD KNAPP,

        Plaintiffs,

v

WAYNE COUNTY TREASURER and COUNTY
OF WAYNE,

        Defendants-Appellees,

and

CITY OF DETROIT and DETROIT CITIZENS
BOARD OF REVIEW,

        Defendants.

UNPUBLISHED
September 21, 2017

No. 336430
Wayne Circuit Court
LC No. 16-008807-CH

Before: SAAD, P.J., and SERVITTO and GADOLA, JJ.

PER CURIAM.

-1-

In this action alleging violations of the federal Fair Housing Act (FHA), 42 USC 3601 *et seq.*, plaintiffs[1] appeal by leave granted[2] the order of the trial court granting summary disposition in favor of defendants[3] on the ground that it lacked subject-matter jurisdiction to hear the case. We affirm.

Plaintiffs alleged in their complaint that defendants' actions in foreclosing on area homes for unpaid taxes have an unjustified disparate impact on African-American homeowners in Wayne County, in violation of the Fair Housing Act of 1968. Specifically, plaintiffs asserted that the City of Detroit has long admitted it overvalued homes in Detroit and thus assessed taxes that were inaccurate. Plaintiffs further asserted defendants knew this, yet still foreclosed on those homes for unpaid taxes. Plaintiffs asserted that defendants' practice of foreclosing on homes when knowing the assessments were incorrect or without regard to whether the assessments were correct violated the FHA. Defendants moved for summary disposition arguing that plaintiffs' claims fail because the Michigan Tax Tribunal (MTT) has exclusive jurisdiction to hear claims involving discriminatory assessment practices. Defendants also argued that the Michigan tax foreclosure process does not implicate the FHA and that the plaintiff neighborhood organizations lacked standing. The trial court granted defendants' motion. The trial court opined that no matter how the complaint was styled, plaintiffs' claims under the Federal FHA were actually challenging defendants' equalization process, which is within the exclusive jurisdiction of the MTT. It thus granted summary disposition in defendants' favor on plaintiffs' claims under the FHA pursuant to MCR 2.116(C)(4).

Plaintiffs argue that summary disposition pursuant to MCR 2.116(C)(4) was improper because the MTT did not have exclusive jurisdiction over their claim. We disagree.

This Court reviews "de novo a circuit court's summary disposition decision." *Packowski v United Food & Commercial Workers Local 951*, 289 Mich App 132, 138; 796 NW2d 94 (2010). Summary disposition pursuant to MCR 2.116(C)(4) is appropriate when the trial court lacks subject matter jurisdiction. *Id* (internal quotations omitted). "For jurisdictional questions under MCR 2.116(C)(4), this Court determine[s] whether the affidavits, together with the pleadings, depositions, admissions, and documentary evidence, demonstrate . . . [a lack of] subject matter jurisdiction." *Id.* at 138-139 (internal quotation marks omitted) (alterations in original). Likewise, "whether a trial court had subject-matter jurisdiction over a claim is a question of law that is reviewed de novo." *Harris v Vernier*, 242 Mich App 306, 309; 617 NW2d 764 (2000). Issues of statutory interpretation are also reviewed de novo. *Michigan AFSCME Council 25 v Woodhaven-Brownstown School Dist*, 293 Mich App 143, 146; 809 NW2d 444 (2011).

---

[1] We do not include Julia Aikens, Edward Knapp, or the later-added parties Matthew Moulds and Michelle Moncrief, as "plaintiffs" because they are not parties to the appeal before us.

[2] *MorningSide Community Org v Wayne Co Treasurer*, unpublished order of the Court of Appeals, entered March 13, 2017 (Docket No. 336430).

[3] We do not include the city of Detroit or Detroit Citizens Board of Review as "defendants" because they are not parties to the appeal before us.

"Jurisdiction is the power of a court to act and the authority of a court to hear and determine a case. As its name implies, subject-matter jurisdiction describes the types of cases and claims that a court has authority to address." *In re AMB*, 248 Mich App 144, 166; 640 NW2d 262 (2001) (internal citations and quotations omitted). While circuit courts are courts of general jurisdiction, "their jurisdiction is not absolute." *In re Harper*, 302 Mich App 349, 352-353; 839 NW2d 44 (2013).

"MCL 205.731(a) grants the [MTT] 'exclusive and original jurisdiction' over '[a] proceeding for direct review of a final decision, finding, ruling, determination, or order of an agency relating to assessment, valuation, rates, special assessments, allocation, or equalization, under the property tax laws of this state.' " *Spartan Stores, Inc v Grand Rapids*, 307 Mich App 565, 571; 861 NW2d 347 (2014). However, "[t]he [MTT] has no jurisdiction to hold statutes invalid or to consider constitutional matters; only the circuit court may do so." *In re Petition of Wayne Co Treasurer for Foreclosure*, 286 Mich App 108, 112; 777 NW2d 507 (2009). But where a claim's gravamen lies in a factual issue that falls under the exclusive jurisdiction of the MTT, the claim will not survive in a circuit court by "[m]erely couching a challenge to an assessment in constitutional terms[.]" *Forest Hills Co-operative v Ann Arbor*, 305 Mich App 572, 618; 854 NW2d 172 (2014). Stated differently, "if a challenge to a tax assessment rests solely on an argument that the tax assessment was made under authority of an illegal statute, the circuit court would have jurisdiction over the matter. But merely phrasing a claim in constitutional terms will not divest the [MTT] of its exclusive jurisdiction." *In re Petition*, 286 Mich App at 112. Indeed, "[t]he MTT's jurisdiction extends to taxpayers' constitutional arguments that a tax assessment is arbitrary and without foundation." *Michigan's Adventure, Inc v Dalton Twp*, 287 Mich App 151, 154; 782 NW2d 806 (2010). Further, while the MTT "has exclusive and original jurisdiction over proceedings for review of agency actions relating to property tax assessments . . . the circuit court is the proper forum for a foreclosure action." *In re Petition*, 286 Mich App at 111.

Plaintiff's argument, in a nutshell, is that cities within Wayne County failed to perform mandated property assessments for years, which resulted in the overassessment of homes. According to plaintiffs, defendants knew of these overassessments, yet nevertheless foreclosed on over-assessed homes for failure to pay the improperly higher tax bills. Plaintiffs assert that this foreclosure practice has a substantial discriminatory effect on African-Americans, observable in the statistical racial disparity concerning homes that are foreclosed on. In effect, plaintiffs' allege that defendants' knowing decision to foreclose on properties based upon over-assessed values (which led to an inaccurate underlying tax debt) has a disproportionate impact on African Americans in violation of the FHA.

It is true that plaintiffs are not seeking a refund or asking the trial court to enjoin defendants' equalization process. Instead, plaintiffs requested that the trial court enjoin the scheduled tax sales of African-American owner-occupied homes in Wayne County. Plaintiffs further asked the trial court to declare that defendants' procedure of foreclosing on homes when knowing (yet ignoring) that Detroit had over assessed properties violates the FHA. However, plaintiffs' claims would require proof that defendants *knew* of mass-overassessments occurring in Detroit and chose to foreclose on those properties without regard for that knowledge. That proof would thus hinge upon whether there were, in fact, overassessments. Plaintiffs' claims

*assume* that there were overassessments. However, if there were no overassessments by Detroit, than there can be no claims against defendants, as stated.

Moreover, there is a specific assessment process in Michigan, involving Detroit, defendants, and the State. First, each year Detroit is required to determine the true cash value of taxable properties located within its boundaries. MCL 211.10. This is a tentative value. After the initial value determination is made, each local taxing unit's Board of Review meets on the Tuesday immediately following the first Monday in March to review the assessment rolls compiled by the local assessor. The Board of Review makes any corrections and then approves and adopts the assessment rolls. MCL 211.29. The Board of Review meets the week after that to hear and determine taxpayer complaints relating to their property valuations. MCL 211.30; *Shaughnesy v Michigan Tax Tribunal*, 420 Mich 246, 248; 362 NW2d 219 (1984). A taxpayer's appeal to the local Board of Review at this time is a prerequisite to any later action by the taxpayer before the Tax Tribunal. MCL 205.735; *Id*. At 248-249. Next:

> Pursuant to Const.1963, art. 9, § 3, the Legislature has provided for a system of equalization. Beginning early in April and ending early in May of each year, the various county boards of commissioners meet to equalize the aggregate assessed value of each class of property in each of the taxing districts within their respective counties at 50% of each class' aggregate true cash value. MCL 209.5; MCL. 211.34. Once county equalization is complete, the State Tax Commission meets to equalize aggregate assessed values among each of Michigan's 83 counties. MCL 209.4; MCL 211.34. The State Tax Commission will add to or deduct from the aggregate valuation of each class of property within each county such amount as will bring the aggregate assessment of those classes to 50% of the aggregate true cash value of the property within the class. [*Shaughnesy*, 420 Mich at 249].

However, "equalization is designed to remedy the potential for unequal assessment levels *among* different taxing districts and *among* different classes of property within the same taxing district. It is important to understand that equalization will not remedy unequal assessment levels *within* a given class of property in a single taxing district." *Id*. at 249-250.

It would only be after determining whether defendants, with knowledge of Detroit's errors, failed to properly equalize the properties, and then chose to foreclose upon and sell properties anyway, that the trial court would then be required to consider whether the foreclosure policy had a disparate effect on African-American homeowners in violation of the FHA. Again, to determine whether defendant's had knowledge of Detroit's overassessments requires that there actually be overassessments. These are factual determinations regarding improper assessments and, as such, are issues that fall within the exclusive jurisdiction or expertise of the MTT. "The need to preserve the tribunal's exclusive jurisdiction is especially great where . . . factual issues requiring the tribunal's expertise are present." *In re Petition of Wayne Co Treasurer for Foreclosure*, 286 Mich App 108, 112; 777 NW2d 507 (2009), quoting *Mich Consol Gas Go v China Twp*, 114 Mich App 399, 403; 319 NW2d 565 (1982). The MTT's expertise extends to "disputes concerning those matters that the Legislature has placed within its jurisdiction: assessments, valuations, rates, allocation and equalization." *In re Petition*, 286 Mich App at 112, quoting *Romulus City Treasurer v Wayne Co Drain Comm'r*, 413 Mich 728, 737; 322 NW2d 152 (1982).

-4-

We recognize that plaintiffs requested the trial court to enter an order enjoining tax sales and declaring that defendants' tax foreclosure and sale policy violated the FHA, and that "[the MTT] lacks the power to issue an injunction. The issuance of an injunction is an exercise of judicial power." *Hillsdale Co Senior Servs, Inc v Hillsdale Co*, 494 Mich 46, 56; 832 NW2d 728 (2013). A request by a party for an injunction, however, " 'do[es] not take [claims] out of the exclusive jurisdiction of the [MTT]' [where] the tribunal [otherwise] 'has the jurisdiction and ability to resolve all the claims presented.' " *Id.*, quoting *Wikman v Novi*, 413 Mich 617, 648-649; 322 NW2d 103 (1982), superseded by statute on other grounds as stated in *Ashley Ann Arbor, LLC v Pittsfield Charter Twp*, 299 Mich App 138, 149; 829 NW2d 299 (2012). Therefore, the trial court did not err when it granted summary disposition in favor of defendants on the ground that the MTT had exclusive jurisdiction. *In re Petition*, 286 Mich App at 112.

Defendants and the trial court relied heavily on *Johnson v Michigan*, 113 Mich App 447; 317 NW2d 652 (1982), to find that the MTT had exclusive jurisdiction over plaintiffs' claims. While plaintiffs contend that this matter is factually distinguishable, the plaintiffs in *Johnson*, 113 Mich App at 459, were ultimately challenging "the validity of the property tax assessments, clearly within the jurisdiction of the tax tribunal." Here, too, although phrased differently, plaintiffs are ultimately challenging the validity of the property tax assessments. Lacking an invalid property tax assessment, plaintiffs would have no claim against defendants regarding their foreclosures.

Plaintiffs also assert that the trial court has jurisdiction over plaintiffs' claims because the FHA expressly authorizes suit to be brought in a "court" and the MTT is not a court. This argument fails for two reasons. First, as previously indicated, how plaintiffs label a claim (in the instant case, as a claim brought under the Fair Housing Act) does not alter that the *substance* of plaintiffs' claim actually challenges a matter that finds its basis in tax assessments. We are not bound by a party's choice of label for a cause of action; "to do so would exalt form over substance." *Norris v Lincoln Park Police Officers*, 292 Mich App 574, 582; 808 NW2d 578 (2011) (internal quotation marks omitted). Second, as the trial court indicated, 42 USC 3613(a)(1)(A) vests concurrent federal and state jurisdiction over FHA claims. However, that does not mean that a state court is *required* to hear a claim under a federal statute when that court is otherwise prohibited from doing so because of a neutral state rule regarding the administration of the court. *Howlett By & Through Howlett v Rose*, 110 L Ed 2d 332; 496 US 356, 372; 110 S Ct 2430, 2440 (1990). After all, "[t]he general rule, bottomed deeply in belief in the importance of state control of state judicial procedure, is that federal law takes the state courts as it finds them" and" [t]he States thus have great latitude to establish the structure and jurisdiction of their own courts." *Id.*, 496 US at 372. Plaintiffs' arguments being unavailing, the trial court's grant of summary disposition in favor of defendants is affirmed.

Affirmed.

/s/ Henry William Saad
/s/ Deborah A. Servitto
/s/ Michael F. Gadola