SHAUGHNESY v TAX TRIBUNAL

Docket No. 68612. Argued October 4, 1983 (Calendar No. 20).—Decided December 28, 1984. Released January 14, 1985.

Thomas Shaughnesy and others, as representatives of a class of residents and taxpayers of the City of Dearborn, brought an original action in the Court of Appeals, seeking an order of superintending control to compel the Tax Tribunal to hear appeals that their residential properties within the city were assessed in excess of 50% of their true cash values. The plaintiffs alleged that notice of the assignment of state equalized values was received after the deadlines for filing appeals with the local board of review and with the tribunal. They also alleged that the tribunal dismissed appeals of some of the members of the class for failure to meet the deadline, that other members decided not to file appeals after being told by tribunal personnel that to do so would be futile, and that the tribunal's refusal to entertain appeals after the deadline denied them due process. The Court of Appeals, D. E. Holbrook, Jr., P.J., and MacKenzie and R. B. Burns, JJ., dismissed the complaint (Docket No. 59706). The plaintiff appeals.

In a unanimous opinion by Justice Ryan, the Supreme Court *held:*

The plaintiffs are entitled to maintain an action for superintending control in the Court of Appeals.

1. The Court of Appeals is vested with jurisdiction to issue, to inferior tribunals, orders of superintending control that are in the nature of mandamus, prohibition, and certiorari. Whatever may be the limits of the Court of Appeals power of superintending control, it has power to issue remedial orders of superintending control pursuant to the General Court Rules.

2. Although an order of superintending control cannot be had where another adequate remedy is available, the availability of an appeal is not an absolute bar to obtaining superintending control where an appeal would not be an adequate remedy.

3. The plaintiffs in this case might have obtained adequate

REFERENCES FOR POINTS IN HEADNOTES
[1] 20 Am Jur 2d, Courts §§ 111, 112, 115.
[2] 20 Am Jur 2d, Courts §§ 116, 117.

relief, individually, by appealing the Tax Tribunal's dismissals of their petitions, but that avenue would not provide adequate relief for the class as a whole. To require each taxpayer in the affected class to file an appeal of the tribunal's decision would impose an unreasonable burden upon them. The amounts involved would be relatively small, while the expenses of appeal would be disproportionately heavy. Moreover, disposition of individual appeals on their merits would not preclude the allegedly unconstitutional practice by the Tax Tribunal of routinely rejecting petitions concerning tax assessments which are filed after the annual deadline.

Reversed and remanded.

1. SUPERINTENDING CONTROL — COURT OF APPEALS.

The Court of Appeals is vested with jurisdiction to issue, to inferior tribunals, orders of superintending control that are in the nature of mandamus, prohibition, and certiorari; whatever may be the limits of the Court of Appeals power of superintending control, it has power to issue remedial orders of superintending control pursuant to the General Court Rules (MCL 600.310; MSA 27A.309; GCR 1963, 711).

2. SUPERINTENDING CONTROL — APPEAL.

The availability of an appeal to a party seeking an order of superintending control is not an absolute bar to obtaining superintending control where the appeal would not provide an adequate remedy (GCR 1963, 711).

*William C. Hultgren,* Dearborn Corporation Counsel, for the plaintiffs.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Richard R. Roesch,* Assistant Attorney General, for the defendants.

RYAN, J. The plaintiffs are residents and taxpayers of the City of Dearborn who, on September 1, 1981, individually and purportedly as members of a class, filed a complaint in the Court of Appeals seeking an order of superintending control over the Tax Tribunal. The Court of Appeals dismissed the plaintiffs' complaint in a one-sentence order, apparently concluding that superintending control

is an inappropriate remedy in this case. Because we have determined that the plaintiffs are entitled to maintain an action for superintending control, we reverse.

The issue presented for our decision is the narrow procedural question of whether the Court of Appeals has authority to entertain the plaintiffs' complaint for an order of superintending control. To better understand the issue presented and our resolution of it, it may be helpful to review the statutory property tax scheme in Michigan.

The local assessors in each of Michigan's townships, villages, and cities, are required, each year, to determine the true cash value of taxable property located within the boundaries of the local taxing district. MCL 211.10; MSA 7.10. The local assessors' duty is to determine the true cash value of each item of property as of December 31 of the year preceding the tax year. MCL 211.2; MSA 7.2. These local valuations are merely tentative, however, *Saginaw v State Tax Comm,* 54 Mich App 160, 166-167; 220 NW2d 706 (1974), because each item of property will ultimately be assessed at 50% of its true cash value as that value is finally determined after completion of the county and state equalization process. Const 1963, art 9, § 3; MCL 211.27; MSA 7.27.

Each local taxing unit's "board of review" meets on the Tuesday immediately following the first Monday in March to review the assessment rolls compiled by the local assessor. MCL 211.29; MSA 7.29. The board of review begins its "second meeting" on the second Monday in March to hear and determine taxpayer complaints relating to their property valuations. MCL 211.30; MSA 7.30. A taxpayer's appeal to the local board of review at this time is a prerequisite to any later action by

the taxpayer before the Tax Tribunal. MCL 205.735(1); MSA 7.650(35)(1).

It should be noted that, because local valuations are merely tentative and are still subject to equalization, as discussed hereafter, a showing by a taxpayer before a board of review that his property is assessed at other than 50% of its true cash value will not entitle the taxpayer to relief. A taxpayer may obtain relief only if he can show that his property has been assessed at a different proportion of true cash value than the rest of the property within the same class in the taxing district. Compare *Tatham v Birmingham,* 119 Mich App 583; 326 NW2d 568 (1982), and MCL 205.737; MSA 7.650(37).

Pursuant to Const 1963, art 9, § 3, the Legislature has provided for a system of equalization. Beginning early in April and ending early in May of each year, the various county boards of commissioners meet to equalize the aggregate assessed value of each class of property in each of the taxing districts within their respective counties at 50% of each class' aggregate true cash value. MCL 209.5; MSA 7.605, MCL 211.34; MSA 7.52. Once county equalization is complete, the State Tax Commission meets to equalize aggregate assessed values among each of Michigan's 83 counties. MCL 209.4; MSA 7.604, MCL 211.34c; MSA 7.52(3). The State Tax Commission will add to or deduct from the aggregate valuation of each class of property within each county such amount as will bring the aggregate assessment of those classes to 50% of the aggregate true cash value of the property within the class.

Equalization is designed to remedy the potential for unequal assessment levels *among* different taxing districts and *among* different classes of property within the same taxing district. It is impor-

tant to understand that equalization will not remedy unequal assessment levels *within* a given class of property in a single taxing district. As this Court observed in *Ypsilanti Supervisors v State Tax Comm,* 386 Mich 343, 355-356; 192 NW2d 227 (1971):

"If Lunde [the local assessor] under-assessed but treated all property owners equally, Ypsilanti Township's total equalized value, even though increased, would not adversely affect any individual taxpayer. If he over-assessed and was equalized at a lower figure than his own total, again the individual taxpayer would not be adversely affected. Lack of uniform treatment of an individual taxpayer is not *caused* by an increased or decreased equalization figure for the whole of the real and personal property of the township although an increase does magnify any inequity of treatment already existing in the assessments.

"* * * In this case, if as a result of what was done by the Board of Commissioners, some Ypsilanti Township taxpayers ended up with assessments in excess of 50% of true cash value, the primary blame and responsibility for such result rests with plaintiff Lunde."

Consequently, although the county and state equalization of residential property in the City of Dearborn may have been conducted properly, certain homeowners in Dearborn may be faced with property tax assessments which exceed 50% of the true cash value of their properties.

In their complaint filed in the Court of Appeals, plaintiffs alleged that the state equalized values assigned to their properties have resulted in their properties being assessed at an amount in excess of 50% of their true cash values. The plaintiffs first became aware of this injury on July 10, 1981, when they received their final tax bills which disclosed the state equalized values of their proper-

ties. The plaintiffs note that this notice was received after both the deadline for filing an appeal with the local board of review, MCL 211.30(4); MSA 7.30(4), and the June 30 deadline for filing valuation appeals in the Tax Tribunal, MCL 205.735(2); MSA 7.650(35)(2). The plaintiffs further alleged that some of their individual appeals have been dismissed by the Tax Tribunal for failure to meet the June 30 deadline, and that other plaintiffs have not filed appeals with the Tax Tribunal, having been advised by tribunal personnel that to do so would be futile. Finally, the plaintiffs claimed that since they received no notice of the state equalized values assigned to their properties until July 10, 1981, the Tax Tribunal's refusal to accept assessment appeals after June 30 is a denial of due process under both the Michigan and United States Constitutions. Compare *DeWitt Twp v State Tax Comm,* 397 Mich 576; 244 NW2d 920 (1976), with *DeWitt Twp v Clinton County,* 113 Mich App 709, 718; 319 NW2d 2 (1982). Also see *Brittany Park v Harrison Twp,* 104 Mich App 81; 304 NW2d 488 (1981). Plaintiffs sought, from the Court of Appeals, an order compelling the Tax Tribunal to hear their appeals, both as individuals and as members of a class.[1]

On December 8, 1981, the Court of Appeals dismissed the plaintiffs' complaint by an order which cited, without explanation, GCR 1963,

[1] The order of superintending control which the plaintiffs seek is in the nature of mandamus. Although mandamus will not issue "unless there is a plain, positive duty to perform the asserted duty," *Pillon v Attorney General,* 345 Mich 536, 539; 77 NW2d 257 (1956), the constitutionality of a statute which allegedly precludes the performance of a constitutionally based duty may be challenged by mandamus. See *Campbell v Judges Retirement Board,* 378 Mich 169; 143 NW2d 755 (1966); *Giddings v Secretary of State,* 93 Mich 1; 52 NW 944 (1892); also see *People v Lansing Municipal Judge,* 327 Mich 410, 412; 42 NW2d 120 (1950); *Maynard v Board of Canvassers,* 84 Mich 228, 245; 47 NW 756 (1890); *Chaddock v Day,* 75 Mich 527; 42 NW 977 (1889).

711.4(b)[2] and *Morcom v Recorder's Court Judges,*
15 Mich App 358, 360; 166 NW2d 540 (1968).

Const 1963, art 6, § 10 provides:

"The jurisdiction of the court of appeals shall be
provided by law and the practice and procedure therein
shall be prescribed by the rules of the supreme court."

The Court of Appeals is vested with jurisdiction to
issue, to inferior tribunals, orders of superintend-
ing control that are in the nature of mandamus,
prohibition, and certiorari. MCL 600.310; MSA
27A.309; GCR 1963, 711. Whatever may be the
limits of the Court of Appeals power of superin-
tending control, *Genesee Prosecutor v Circuit
Judge,* 386 Mich 672, 680-681; 194 NW2d 693
(1972), it should be evident that the Court of
Appeals has power to issue remedial orders of
superintending control pursuant to GCR 1963, 711.

In keeping with the nature of the writs which it
replaces,[3] an order of superintending control can-
not be had where "another *adequate* remedy is
available." GCR 1963, 711.2 (emphasis added). Of
course, the plaintiffs could have obtained relief
individually by appealing the Tax Tribunal's dis-
missals of their petitions. MCL 205.753(1); MSA
7.650(53)(1).[4] However, despite the language of

[2] GCR 1963, 711.4(b) provides:

"When an appeal in the Supreme Court, the Court of Appeals, or
the circuit court is available, that method of review must be used. If
superintending control is sought and an appeal is available, the
complaint for superintending control must be dismissed."

[3] See *Howard Pore, Inc v Revenue Comm'r,* 322 Mich 49, 75; 33
NW2d 657 (1948) (mandamus); *Warnshuis v Bd of Registration,* 285
Mich 699, 702; 281 NW 410 (1938) (prohibition); *In re Brewer,* 250
Mich 450, 451; 228 NW 762 (1930) (certiorari).

[4] The right of appeal is not of common-law origin and is a matter of
constitutional and statutory regulation. *Ritzer v Ritzer,* 243 Mich 406,
412; 220 NW 812 (1928). Although appeals are ordinarily viewed as
continuations of the proceedings instituted below, *Marbury v Madi-
son,* 5 US (1 Cranch) 137, 175-176; 2 L Ed 60 (1803); *Valentine v*

GCR 1963, 711.4(b) (see fn 2), the availability of an appeal is not an absolute bar to obtaining superintending control where an appeal would not be an *adequate* remedy.

In *Cahill v Fifteenth District Judge,* 393 Mich 137; 224 NW2d 24 (1974), the plaintiff filed a complaint for superintending control in the circuit court alleging that the district court refused him both a jury trial and an opportunity to post a 10% bond in a traffic violation matter. The complaint went on to allege that this was a general policy followed by the district court and that the plaintiff represented a class of similarly situated persons. This Court held that an action for superintending control would lie in the circuit court, stating:

"While appeal did provide a suitable procedure to resolve Cahill's individual case, it could not have supported relief for the class as a whole. Under the present facts only superintending control allowed the circuit court to address and resolve the objections concerning the generalized practices of the district court and, if appellants had prevailed, to issue an appropriate remedial order." 393 Mich 143.

In *In the Matter of Hague,* 412 Mich 532, 546-547; 315 NW2d 524 (1982), this Court addressed, once again, the adequacy of regular appeal as a

*Malone,* 269 Mich 619, 622-623; 257 NW 900 (1934), and although an appellate court may not ordinarily exercise greater jurisdiction than the court in which the case originated, *In re Estate of Fraser,* 288 Mich 392; 285 NW 1 (1939); *Mulder v Corlett,* 54 Mich 80; 19 NW 756 (1884), the constitution provides that the review of quasi-judicial administrative decisions "shall include, as a minimum, the determination whether such final decisions * * * are authorized by law." Const 1963, art 6, § 28. As a result, the fact that the Tax Tribunal, as a division of the Department of Treasury, is constitutionally incapable of invalidating acts of the Legislature, see *Wikman v Novi,* 413 Mich 617, 646-647; 322 NW2d 103 (1982), and Const 1963, art 3, § 2, does not preclude the Court of Appeals from reviewing the validity of legislation on appeal from the Tax Tribunal.

jurisdictional bar to an order of superintending control:

"It is clear from this Court's opinion in *Cahill v Fifteenth District Judge*, 393 Mich 137; 224 NW2d 24 (1974), that availability of an appeal in the individual case does not preclude superintending relief when that procedure does not provide an adequate remedy. Implicit in *Cahill* is the idea that a superior court always has jurisdiction to issue an order of superintending control and that adequacy of the appeal remedy is not a jurisdictional test but merely a procedural requirement to be met before relief can be granted.

"It is apparent to us, however, that the case-by-case appeal to the Court of Appeals of the hundreds of prostitution cases dismissed by Judge Hague would not have been a practical, efficient or commonsense remedy for his persistent, wholesale dismissal of all prostitution cases prosecuted in the City of Detroit during his service as presiding judge. The delay and expense inherent in the appeal of dozens upon dozens of such cases, while during their pendency Judge Hague continued to refuse to enforce the ordinance, suggests persuasively that, in the circumstances, case-by-case appeal was neither an adequate nor realistic remedy."

Although the plaintiffs before the Court might have obtained adequate relief, individually, by appealing the Tax Tribunal's dismissals, that avenue would not provide adequate relief for the class as a whole. To require each individual taxpayer in Dearborn in the affected class to file an appeal of the Tax Tribunal's decision would impose an unreasonable burden upon the hundreds, perhaps thousands of alleged aggrieved property owners, requiring each of them to hire counsel and pursue an individual appeal involving a relatively small amount at disproportionately heavy expense. The impact of such a process upon the docketing and decisional process in the Court of Appeals further suggests the unreasonableness of requiring an in-

dividual appeal by each affected taxpayer. More-over, disposition of individual appeals on their merits would not preclude the allegedly unconstitutional practice of the Tax Tribunal's routinely rejecting petitions concerning tax assessments which are filed after the annual June 30 deadline.

Reversed and remanded to the Court of Appeals for plenary consideration.

WILLIAMS, C.J., and KAVANAGH, LEVIN, BRICK-LEY, CAVANAGH, and BOYLE, JJ., concurred with RYAN, J.